THE NEW YORK & NEW HAVEN RAILROAD COMPANY *vs.* THE CITY OF NEW HAVEN.

THE SHORE LINE RAILWAY *vs.* THE SAME.

A city charter authorized the city authorities to assess the expense of certain street improvements on the owners of property specially benefited thereby.

Held that a railroad company in front of whose passenger station and along whose track a street had been paved by the city, was not liable to be assessed for the expense, either on the ground that access to the station was made more easy, or on that of the increased value of the land occupied by the railroad for building or other business purposes.

APPLICATIONS to the Superior Court in New Haven County for relief from assessments laid by the authorities of the city of New Haven for the paving of a street in the city. The following facts were found by a committee in the first named case.

An order of the common council of the city of New Haven, providing for the laying of a wooden pavement in Union street from Court street to Wooster street, was passed on the 28th of September, 1870. On the 17th of November, 1871, an order was passed by the council laying an assessment upon the adjoining proprietors for the expense of this pavement. This order imposed upon the New York & New Haven Railroad Company an assessment of $1,535.24 and another assessment of $312.74. These assessments were not laid upon the franchise of the railroad company, but upon the company as the owner of land adjoining Union street, between Chapel and Wooster streets, and that part of Chapel street and Wooster street extending from Union street northwesterly to the bridges in Chapel and Wooster streets respectively. The passenger station of the railroad company adjoins Union street from Chapel to Wooster street, a distance of three hundred and twelve feet, and the tracks of the railroad enter the station about fifteen feet below the grade of Union street. The assessment of $312.74 was laid upon the company for that portion of the pavement which extends from the line of Union street up Chapel street to the bridge adjoining the station in Chapel street, twenty-two feet, and also for that portion of the pavement which extends from Union street up Wooster street to the bridge in Wooster street adjoining the station in Wooster street, twenty-two feet. The assessment of $1,535.24 is for the pavement in Union street from Chapel to Wooster street, three hundred and twelve feet.

The station building belongs to the railroad company, but

the land is owned in part in fee and in part occupied under a lease foi ninety-nine years made in 1848 by the city of New Haven to the New Haven & Northampton Company, and assigned by that company to the petitioners.

The station is used for railroad purposes exclusively, and occupies all the available ground on Union street between Chapel and Wooster streets. There are four entrances to it, one on Chapel street, one on Union street, one on Wooster street and one on State street. The majority of foot passengers leaving and entering the station use the Chapel street entrance. Nearly all the public carriages and express wagons resort to the Union street entrance, and this part of Union street is a public stand for such vehicles. Private carriages and some foot passengers use the State street entrance. The Wooster street entrance is but little used.

The station is used exclusively for passengers, and no freight is received or delivered in it by the railroad company. The pavement renders the access of passengers with their baggage to and from the station easier, but it does not appear that the railroad company carries any more passengers or receives any higher or greater fares in consequence of such increased facilities. The parties offered no evidence, and no enquiry was made, as to whether the company should be assessed at a different rate from other adjoining proprietors, if assessed at all. The assessments were at the same rate as upon the other adjoining proprietors.

The committee found that the railroad company did not derive any benefits from the pavement, except such, if any, as are necessarily to be inferred from the foregoing facts.

The finding in the second case was the same in its general facts, the assessment against the Shore Line Railway being for the same improvement and laid in the same manner. The amount of the assessment was $522.46. It was not laid upon the franchise of the railroad company, but upon the company as the owner of land adjoining Union street, between Court and Wooster streets, being two hundred and two feet on Union street from Court street to Railroad Block so-called. The track of the railroad runs adjoining Union street from Court

street, which it crosses, to Railroad Block, a distance of two hundred and two feet and at an average depth of about fifteen feet below the grade of Union street. A perpendicular stone wall separates the land of the company from Union street, and the dividing line between the railroad and the street runs through the center of this wall. The track of the railroad with the narrow ditch by the side of it occupies all the available ground to the street line. The Shore Line Railway, at the time of the assessment, ran from a point about a mile northeast of Court street to the station, over land leased by the company from the New York & New Haven Railroad Company, with the exception of the two hundred and two feet above referred to, which land was and is owned by the Shore Line Railway in fee. Its road is now operated by the New York & New Haven Railroad Company. The pavement increased the value of real estate for building purposes along the street. The assessment was at the same rate per front foot as upon all other adjoining owners.

The committee found that the Shore Line Railway did not derive any benefits from the laying of the pavement, except such, if any, as are necessarily to be inferred from the above facts.

Upon these facts both cases were reserved for the advice of this court, and were argued together.

*Bronson*, for the City of New Haven.

1. The railroad companies are clearly liable to an assessment for any benefits they may receive by the construction of this pavement, in their use of their property for railroad purposes. It is found in the record that the pavement rendered access to the passenger station of one of the companies easier. We know as a fact, outside of the record, that a good pavement is a benefit to any one, in the use of real estate bordering upon the street. The only benefit claimed in the case of *City of New Haven* v. *Fair Haven & Westville R. R. Co.*, 38 Conn., 422, was the saving of expense and trouble, on the part of the railroad company, for replacing earth along their track, dug out by the passage of vehicles. From this it will appear that in the use of this property for railroad purposes, the petitioners have at least received *some* benefit.

2. The legal title to a large portion of this property is in the petitioners; not simply the *use*, but the *whole interest*. When this land is no longer needed for railroad purposes, the petitioners have power to sell it, and appropriate the proceeds. *Yates* v. *Van de Bogert*, 56 N. York, 526. There is nothing in the charters of these two petitioners which makes them stand upon grounds different from ordinary landholders.

*Watrous*, for the railroad companies, cited *City of Bridgeport* v. *N. York & N. Haven R. R. Co.*, 36 Conn., 255; *City of New Haven* v. *Fair Haven & Westville R. R. Co.*, 38 id., 422; *In re Albany Street*, 11 Wend., 149; *Owners of ground, &c.*, v. *Mayor, &c., of Albany*, 15 id., 374; *State* v. *City of Newark*, 3 Dutch., 185; *Appeal of North Beach & Mission R. R. Co.*, 32 Cal., 499, 520; *McCormack* v. *Patchin*, 53 Misso., 33; *Hammett* v. *City of Philadelphia*, 65 Penn. S. R., 148; Cooley's Const. Lim., 497; 2 Dillon Municp. Corp., §§ 596, 597, 599, 619.

CARPENTER, J. In each of these cases the appellant applied to the Superior Court for relief against the assessment of betterments laid by the city of New Haven for the purpose of defraying the expense of paving a public street. The appellants are railroad corporations, engaged only in the business of operating railroads, and the land assessed in each case is used exclusively for railroad purposes.

These assessments can be made only on property which is specially benefited by the improvement. The question then is, whether the land assessed was specially benefited. The language of the finding is;—"I do not find that the appellant derived any benefits from said pavement, except such, if any, as are necessarily to be inferred from the foregoing facts." The finding in this respect is the same in both cases.

The material facts thus referred to are—that the land assessed is used exclusively for railroad purposes, the land owned by the New York & New Haven Railroad Company having a passenger station upon it, and the land owned by the Shore Line Railway having no building upon it; that access

to the station building is made easier by the improvement, and that the value of the land is increased for building purposes generally.

We are unable to see how the land assessed is made any more valuable to the owners for any purpose for which they can lawfully use it. The land was originally taken, is now used, and presumptively must continue to be used, for railroad purposes. For such purposes it can be no more benefited by the improvement than land taken for water works, public streets, or parks.

The fact that the pavement makes access to the railroad station easier shows a benefit to the public at large, but not a special benefit to the corporation. They carry no more passengers, and receive no greater compensation, in consequence of such increased facilities.

The increased value of the land for building purposes, or for business purposes generally, will hardly justify the assessment. Whatever benefit there is, is remote and contingent; not direct, immediate, and certain. The corporation can only realize the benefit, if ever, at some distant time in the future, when the present use is no longer required; and it is wholly uncertain whether that time will ever arrive.

The company is not at liberty to abandon the railway, and throw the land into the market at any time it pleases. The land was taken for public use, and the public will be likely to demand a continuance of that use.

The benefits resulting from this improvement are not permanent, but will, in time, cease to exist. Probably before the appellants can experience any practical advantage from this pavement, it will have given place to other improvements, so that the supposed benefits are in fact inappreciable.

The reasoning of the late Chief Justice of this court in *City of Bridgeport* v. *The New York & New Haven Railroad Company*, 36 Conn., 255, applies to these cases.

The Superior Court is advised to annul the assessments.

In this opinion PARK, C. J., and PARDEE, J., concurred; FOSTER and PHELPS, Js., did not sit.