THE PARK ECCLESIASTICAL SOCIETY AND OTHERS vs. THE. CITY OF HARTFORD.

Upon an appeal of sundry land-owners from an assessment of benefits for a city sewer, it was held—

1. That the assessment was not illegal because the lands assessed had already a sufficient sewer, for which they had many years before been assessed, it being found that they were benefited by the new sewer.

2. That it was not illegal because the new sewer was constructed principally for · the purpose of abating a nuisance in another locality, and of settling a legal. controversy with a party into whose lands the old sewer emptied.   So long as · the matter was within the jurisdiction of the city authorities, and their pro· ceedings were regular, the court could not consider the motives of their action or the reasons for or against it.

3. That it was not illegal because all the property owners on the street were opposed to the construction of the sewer.

4. That it was not illegal because the whole cost of the sewer was over $10,000, and it had been ordered by the common council, while the charter of the city provided that no public work which should require an expenditure of more than $10,000 should be so ordered, but should be submitted to a vote of the city.   This provision of the charter was intended to apply only to improvements which affect the public at large and which are paid for by the city.

5. That it was not illegal on the ground that the city ordinance, under which the assessment was made, did not conform to the provisions of the charter— the latter providing that the "common council may assess the whole or any part of the expense of such public work upon the persons whose property is in its judgment specially benefited thereby," while the ordinance established a fixed rule that "the entire expense should be assessed as betterments upon the persons or land specially benefited."

APPEAL from an assessment of benefits in the laying out and construction of a sewer by the city of Hartford, taken to the judge of the Court of Common Pleas, under the provi-

sions of the city charter. Facts found by a committee, a re-assessment made, and the case reserved for advice. The facts are sufficiently stated in the opinion.

*A. P. Hyde* and *C. H. Owen*, for the appellants.

*C. R. Chapman* and *C. J. Cole*, for the City of Hartford.

CARPENTER, J. The common council of the city of Hartford constructed a sewer through High street and assessed the cost thereof upon the persons especially benefited thereby. Several parties appealed to the judge of the Court of Common Pleas, a committee was appointed who heard all the appeals and reported the facts and his doings to the judge, and the judge accepted the report and reserved the question as to the proper judgment to be rendered thereon for the advice of this court.

It appears that in 1854 a sewer was constructed through a portion of High street, the cost of which was assessed upon the parties benefited, and the same property is again assessed for the cost of the present sewer. The old sewer remained in good condition until 1873, when the present sewer was built. It connected with another sewer at or near the New York, New Haven & Hartford railroad, through which its contents were conducted and discharged into Gully Brook.

Prior to 1873 the last-named sewer became defective and insufficient, which caused a nuisance. Upon the petition of the railroad company the city was temporarily enjoined from discharging the contents of the High street sewer into the railroad sewer, and pending that litigation it was arranged that a new sewer should be built through High street, which was satisfactory to the railroad company, and the petition was discontinued.

The board of street commissioners recommended the construction of the proposed sewer on the 8th of July, 1872. Two weeks later the consideration of the matter was indefinitely postponed by the common council. On the 12th day of September following the injunction referred to was served, and soon after the common council ordered the building of

the sewer. None of the proprietors on High street petitioned for it, and nearly all remonstrated against it. It cost over $11,000, and was not authorized by a vote of the city.

Ordinarily an appeal of this kind presents only the question of the fairness and equality of the apportionment; but here the validity of the whole assessment is called in question for want of jurisdiction and for irregularity in the proceeding.

It is claimed that no assessment can be made because the property assessed was so situated that it could not be the subject of special benefits, for the reason that it already possessed adequate drainage facilities—some through the sewer of 1854, and some through other channels. In support of this position three cases are cited, but they are not in point. *Bridgeport* v. *New York & New Haven Railroad Company*, 36 Conn., 255; *New York & New Haven Railroad Company* v. *New Haven*, 42 Conn., 279; *Hartford* v. *West Middle School District*, 45 Conn., 462. The first two were cases in which lands taken and used for railroad purposes alone were assessed for improvements in streets. It was held that they could not be assessed. In the last case land taken for a school-house site was assessed for a similar improvement and the court held that it was not subject to assessment. The distinction between those cases and this is obvious enough. If in those cases the improvement had been a sewer, the land held for railroad or school purposes might have been benefited, and a different question would have been presented. So too, if the land had been used for residences or other business purposes. In this case the improvement was a sewer, and the property assessed was used for purposes which required a sewer. Presumptively the drainage facilities now afforded are better and more valuable than those previously existing, as the committee has found that the property assessed was benefited, and we must presume to an amount exceeding the amount assessed.

It is further claimed that the whole assessment was illegal on account of the purpose for which the sewer was built; that it was not built for the ordinary purpose of accommodating and benefiting the owners of land on the street, but

for the purpose of abating a nuisance in another locality and settling a legal controversy between the city and the railroad company. If we were at liberty to inquire into the motives for constructing this sewer we might find some difficulty in determining that that was the sole object. It may be true that the settlement of that controversy was an element that entered largely into the considerations which induced the common council to construct the sewer; but the whole truth seems to be, that in addition to that they made a proper disposition of sewage coming from High street and causing a nuisance, and which it was claimed that it was the duty of the city to dispose of otherwise, and also furnished a suitable sewer for the property on High street, and thereby benefited that property. Whether that duty in fact devolved upon the city is not now a question open to discussion. It was an open question between the city and the railroad company, and in the settlement it seems that the city assumed the duty; and we may presume for the purposes of this case that it was properly done.

But the great question which underlies this discussion is, whether it is competent for the appellate tribunal, on a question of damages or benefits, to inquire into the motives which induced the city to make the improvement. We think it is not. If the thing done was within the jurisdiction of the city authorities and done in a legal manner, the motive for doing it is immaterial. We cannot inquire into the sufficiency of the reasons for and against. The incidental advantage to the city cannot invalidate the proceedings. The great fact still remains that the property was benefited, and the owners receive an equivalent for the assessment they are required to pay.

We have intimated that the necessity for this sewer was a question for the city authorities. The language of the charter leaves no room for doubt on this question. "The court of common council for the city of Hartford shall have *exclusive* power to lay out, make and establish within said city new highways, streets, &c.,    *    *    also to lay out, construct and alter public sewers through the highways, streets, &c.,

\*    \*    within said city." *Charter and Ordinances*, pages 99, 100. That word "exclusive" is strong language, especially as there is no provision for an appeal on this question.

But it is said that all the property owners opposed the construction of the sewer by remonstrance. That doubtless was one reason why it should not be built. Of its sufficiency the common council alone could judge. It was not conclusive; other considerations might outweigh it. It may be that it ought to have been adjudged sufficient, and that the power vested in the common council was abused. If so, and there is danger of its repetition, the legislature must hereafter supply the remedy. As the charter was when this improvement was ordered, and now is, the power is absolute, and not at all contingent upon the opinions or wishes of the property owners. It will doubtless be cautiously and sparingly exercised, except when desired by those interested.

It is also insisted that the proceeding is not legal, and that the property owners ought not to be required to pay the assessments, for the reason that the city exceeded the limit of its powers in ordering an improvement costing over $10,000 without a vote of the city authorizing it. The charter provides "that no vote or resolution of said common council, ordering a public work or improvement which shall require an expenditure of more than ten thousand dollars, shall be obligatory on the city unless approved by a majority vote of a city meeting duly warned and holden for that purpose."

That provision of the charter was obviously intended to protect the tax-payers of the city against extravagant and unnecessary expenditures by the common council. There can be no occasion for the people of the whole city to vote upon a question of local improvement in which they have no direct interest, and the expense of which is not borne by them. The tax-payers will be protected and their interests fully subserved by limiting the operation of that clause in the charter to those improvements which affect the public at large, and which are paid for by the city. It may be said that there is quite as much reason for requiring a local improvement to be approved by those interested, and who have to pay for it, as there is in

requiring a more general improvement to be approved by the city. There is force in this suggestion when addresssed to the legislature. There is however this difference; a general improvement paid for by the city is supposed to benefit not only the people of the city, but frequently also the community at large, and the expense is regarded as a burden, while a local improvement is supposed to benefit only the parties immediately interested and in excess of the cost, so that it may be regarded as an advantage rather than a burden. On the whole we think that that clause in the charter has no application to an improvement of this character.

The remaining objection is that the city ordinances which direct in substance that the whole expense of an improvement shall be assessed upon those specially benefited do not conform to the charter, and are therefore void. More specifically, we understand the claim to be this—the charter authorizes the common council to assess the whole or any part of the expense upon the persons whose property is in its judgment specially benefited thereby, while the ordinances prescribe a rule or result in all cases without a particular judgment upon the individual case.

We do not think the ordinances justly open to this objection. The charter authorizes the whole expense to be assessed, and the ordinances require that it shall be. There is no necessary conflict in this. Of course the ordinances will not be so interpreted as to require assessments without or in excess of benefits. With that limitation we see no objection to them. They may well apply to all cases where the benefits exceed the assessments. Should a case arise in which the benefits are less, then the objection now urged would have more force.

Judgment on the report is advised accordingly.

In this opinion the other judges concurred.