## The New York, New Haven & Hartford Railroad Company *vs.* The City of New Britain.

Land owned by a railroad company in fee and with no restriction upon its use, and which is occupied only as a place for running off and leaving freight cars, but which is well situated for mechanical and manufacturing purposes, is liable to a city assessment for a public sewer by which it is benefited.

It was found by a committee that the land would "in all probability" continue to be held and used for railroad freight purposes. Held that a mere probability was not sufficient to affect the case, and that if a degree of probability which amounted to a practical certainty was intended, the facts on which the conclusion was based should have been found, that the court might see on what it rested.

APPEAL from an assessment for a public sewer; taken to the judge of the Court of Common Pleas of Hartford County. Facts found, judgment for the appellants, and motion in error by the appellees. The case is sufficiently stated in the opinion.

*C. E. Mitchell* and *J. H. Pease*, for the plaintiffs in error.

*H. C. Robinson*, for the defendants in error.

LOOMIS, J. The city of New Britain constructed a public sewer in Myrtle street and assessed the railroad company the sum of nine hundred ninety-one dollars and ninety cents on account of benefits to a parcel of land belonging to the company containing about four acres and having a frontage on the street of five hundred and sixty-six feet. An appeal was taken by the railroad company from this assessment to the judge of the Court of Common Pleas for Hartford County. The case was referred to a committee, and upon the facts found the assessment complained of was wholly set aside, and the case comes to this court by motion in error.

The only question presented for our consideration is, whether an assessable benefit to the land described is to be inferred from the facts found?

The facts are substantially as follows: The land in question was originally acquired by the New Britain & Middletown Railroad Company as a part of a lay-out of the "line, location, route and lands, whereon to construct a portion of their railroad, depot, buildings, side tracks, and shops, in the borough of New Britain." Afterwards, in the year 1866, the company acquired by deed an absolute title in fee unrestricted as to the use, which title the appellant now holds. The land is wholly unoccupied by buildings or otherwise, except that a small portion of it is used by the petitioners' tracks. Although there is no restriction binding on the company as to the use, yet it is found to have been purchased for the purpose of storing freight cars, and so far as used hitherto it has been exclusively for this purpose. The main railroad tracks are all on land situated on the other side of Myrtle street. The land is eligibly situated for mechanical and manufacturing purposes, and for such purposes would be especially benefited by a sewer. The assessment is reasonable in amount and in due proportion to the other assessments.

These are all the material and controlling facts. The additional finding, by way of inference, that the land is not benefited, does not affect the question, because it is expressly reserved for a contrary inference on the part of the court.

The other finding, as to the probability that the land will continue to be used exclusively for railroad freight purposes, has occasioned some hesitation. We think, however, that it was only intended as an expression of the opinion of the committee, and not as an independent material fact; but if otherwise, we think that a mere probability, not rising to that high degree which is a practical certainty, is not sufficient to affect the case. And where the probability is of that high character, the facts upon which the conclusion of the committee is based should be found, that the court may see on what it rests.

The appellant insists that the question whether upon the facts of this case there was an assessable benefit to this land arising from the construction of a sewer along the

street in front of it, is no longer open for discussion before this court, in view of its repeated decisions exempting property held for railroad purposes.

At first blush the claim may seem plausible, but a brief reference to and analysis of the cases referred to will show tangible ground for a distinction which must lead to a different result in the case at bar.

In *First Ecclesiastical Society* v. *City of Hartford*, 35 Conn., 66, an assessment for a sewer along a street in front of a church edifice was reduced because the society had erected at very great expense a building exclusively adapted and used for a house of public religious worship, and the committee found that a large portion of the money so invested would have to be sacrificed before the premises could be turned to any use which would make the sewer specially beneficial.

In *City of Bridgeport* v. *New York & New Haven Railroad Co.*, 36 Conn., 255, the city undertook to assess benefits to the *franchise* of the railroad company, on account of laying out a highway by the side of the railroad track along the ribbon of land which the legislature had authorized the railroad company to appropriate and hold for a specific use. The court held that this ribbon of land could not be taken for a highway, although the city might have laid out a highway *across* the railroad, and that the assessment on the *franchise* of the railroad company was illegal. The questions in that case, therefore, were entirely unlike the one under consideration. The court, however, in the opinion said—"The railroad company have *a qualified easement or right in the land for a specified use*, and the value of their right or easement in the land cannot be directly or substantially increased by the existence of the highway."

In *New York & New Haven Railroad Company* v. *City of New Haven*, 42 Conn., 279, the land "was originally taken for railroad purposes," and was occupied wholly by a passenger station, where no freight was received or delivered, and the assessment was for paving the streets contiguous. And in the case of *Shore Line Railway* v. *City of*

*New Haven*, heard at the same time, the assessment was on account of the ribbon of land permanently occupied by a through track. The court in disposing of both the cases said : " We are unable to see how the land assessed is made any more valuable to the owners for any purpose for which they can lawfully use it. The land was originally taken, is now used, and presumptively must continue to be used, for railroad purposes. For such purposes it can be no more benefited by the improvement than land taken for water works, &c. . . The company is not at liberty to abandon the railway, and throw the land into the market at any time it pleases. The land was taken for public use, and the public will be likely to demand a continuance of that use."

In *City of Hartford* v. *West Middle District*, 45 Conn., 462, the land assessed was permanently dedicated to school uses and purposes by the erection upon it of a school-house of the value of $118,844.

In *Park Ecclesiastical Society* v. *City of Hartford*, 47 Conn., 91, the court referring to the three cases last mentioned, said : " The first two were cases in which lands taken and used for railroad purposes alone, were assessed for improvement in streets. It was held that they could not be assessed. In the last case land taken for a school-house site was assessed for a similar improvement, and the court held that it was not subject to assessment. The distinction between these cases and the present one is obvious. If in those cases the improvement had been a sewer, the land held for railroad or school purposes might have been benefited and a different question would have been presented."

We have now referred to all the cases decided by this court which have any direct or important bearing on the question under consideration, and in all of them, where the assessments of benefits were held illegal, there was either a limitation to a special public use in the title to the land assessed, or else a marked dedication to such special use, made practically irrevocable by expensive buildings or

structures specially adapted to that use. The cases of *City of Bridgeport* v. *New York & New Haven Railroad Co.*, *New York & New Haven Railroad Co.* v. *City of New Haven*, and *Shore Line Railway* v. *City of New Haven*, belong to the former class; and the cases of *First Ecclesiastical Society* v. *City of Hartford*, and *City of Hartford* v. *West Middle District*, belong to the latter class. Arising from the one or the other of these two grounds there was in each case a presumption of permanency in the special use, amounting to nearly or quite a moral certainty in favor of its continuance.

But in the case at bar this element of permanency is wholly wanting, and there is no ground on which to base any strong presumption that the special use will not be changed. There is no qualification or limitation in the title, but it is wholly unrestricted as to use, as much so as the land of any of the manufacturing corporations on the same street.

And instead of any dedication by expensive existing structures, we find the land wholly unoccupied, except as to the small margin on which tracks for the mere temporary storage of freight cars have been laid. And as to that portion of the land covered by these tracks we cannot hold the assessment illegal, or that it should be reduced on that account, for the reason that the tracks can be taken off at an insignificant expense without any sacrifice on the part of the railroad company. The railroad practically ends at the depot, and the question as to the temporary tracks beyond, which skirt the margin of a valuable four-acre lot owned in fee and situated most eligibly for business purposes, is very different from that relating to the main tracks, occupying the narrow ribbon of land taken for the very purpose of laying them and running trains thereon. The use of the latter is necessarily special and permanent, while that of the former lacks every element of permanency.

There was error in the judgment complained of, and it is reversed.

In this opinion the other judges concurred.