THE LAKE· SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY v. THE CITY OF GRAND RAPIDS ET AL.

*Railroad companies—Exemption from taxation—Local improvements—Collection of assessment.*

1. The exemption from taxation granted to the Michigan Southern Railroad Company under its special charter does not apply to lines organized under the general railroad law of the State, and thereafter leased and operated by said railroad company.

2. The contention that the words "in lieu of all other taxes," as used in How. Stat. § 3360, which provides that the specific tax paid by a railroad company organized under the general railroad law shall be in lieu of all other taxes upon the property of such company, etc., preclude the levying by a city of special assessments for local improvements, cannot be sustained.

3. Terminal property of a railroad company, consisting of a freight house and a portion of its road-bed and right of way, cannot be sold, under the provisions of a city charter, for non-payment of assessments thereon for local improvements.

4. The validity of an assessment for benefits upon a portion of the right of way and road-bed of complainant's road, including a freight-house on said right of way, occasioned by the paving of the street upon which said assessed property abuts, is sustained. The sale of said property to satisfy said assessment is

set aside, but without prejudice to the right of the defendant city to proceed to the enforcement of the assessment in such mode as it may deem best.

Appeal from the superior court of Grand Rapids. (Burlingame, J.)  Argued June 23, 1894.  Decided November 7, 1894.

Bill to vacate an assessment for local improvements, to enjoin the execution of a deed on a sale of the property to satisfy the assessment, and to restrain any further sales. Complainant appeals from decree sustaining demurrer. Decree reversed, and one entered in this Court in accordance with the opinion.  The facts are stated in the opinion.

*C. E. Weaver* and *FitzGerald & Barry* (*Francis A. Stace*, of counsel), for complainant.

*William Wisner Taylor*, for defendants.

LONG, J.  On April 24, 1891, the common council of the city of Grand Rapids determined, by resolution, to pave a part of West Bridge street, including the part which passes the complainant's railroad and freight house. The pavement was constructed, and on January 11, 1892, the common council designated the district benefited; which included the north 100 feet of complainant's premises, and assessed complainant for benefits therefor the sum of $846.50, the premises being valued at $1,500. From this assessment complainant appealed to the common council, on the ground that its lands were not liable to assessment for such improvements. This claim was denied by the common council, and the assessment roll was confirmed on March 21, 1892. The assessment was to be paid in five annual installments. The first was not paid, and the land was sold by the city marshal for the amount of the same and costs of sale, on November 4, 1892. The second in-

stallment not being paid, it was returned by the treasurer to the city clerk. The city charter provides (title 6, §§ 33, 41) for the execution of a deed by the mayor at the expiration of one year from the date of sale. This bill was filed September 29, 1893, for the purpose of vacating the assessment as illegal, on the ground that the complainant is not liable to assessment for this municipal street improvement, and that its premises are not benefited or susceptible of benefit thereby, and to enjoin the mayor from executing a deed on the sale for the first installment, and the marshal from selling on the second. The defendants demurred generally to the bill. The court sustained the demurrer, and dismissed the bill.

The contentions of the complainant are:

1. That, under the special acts of the Legislature by which it is incorporated, it cannot be assessed or taxed for municipal street improvements.

2. That, under the general railroad law, it cannot be so assessed or taxed.

3. That the charter of the city of Grand Rapids does not authorize the assessment of such tax on the lands of complainant used and operated in the exercise of its franchises.

4. That the lands of complainant so used are not susceptible of benefit from a street improvement, and for that reason cannot be assessed.

The Michigan Southern Railroad Company was originally organized under a special charter. Laws of 1846, p. 170, Act No. 113. By its charter it is provided:

" The said company shall pay to the State an annual tax of one-half of one per cent. upon the capital stock paid in, including the $500,000 of purchase money paid or to be paid to the State, until the first day of February, 1851, and thereafter an annual tax of three-fourths of one per cent. upon its capital stock paid in, including the $500,000 of purchase money aforesaid, and also upon all loans made to said company for the purpose of constructing said railroad, or purchasing, constructing, chartering, or hiring of steamboats authorized by this act to be held by

said company, which tax shall be paid in the last week in January in each year to the State Treasurer; and the property and effects of said company, whether real, personal, or mixed, shall, in consideration thereof, be exempt from all and every other tax, charge, and exaction by virtue of any laws of this State now or hereafter to be in force, except penalties by this act imposed."

Afterwards, in the year 1855, an act was passed by the Legislature to authorize the Michigan Southern Railroad Company to consolidate with the Northern Indiana Railroad Company. Laws of 1855, p. 300, Act No. 138. This act contains the following provision:

"The said corporation so to be organized by virtue of this act shall continue subject to the same rate of tax as though such consolidation should not take place, and the amount of its capital and loans hereafter upon which such taxation shall be paid shall be such portion of the whole of its capital and loans as is actually employed in the State of Michigan,"

It is contended that the words "tax, charge, and exaction," employed in the statute, cover every kind of assessment which can be made under the taxing power of the State, and that, under this special act by which complainant was incorporated, it cannot be assessed or taxed for municipal street improvements.

The act of 1846, for the organization of the Michigan Southern Railroad Company, also provided for the sale of the Southern Railroad, and for the right of the newly-organized company to purchase it. The new company was authorized to build a road from the city of Monroe, passing through Petersburg, Adrian, Hillsdale, thence to Coldwater, and thence to Lake Michigan, on the line theretofore established as the line of the Southern Railroad by the State, or anywhere further southward than said line; and also from the junction of the Tecumseh branch with the Southern Railroad, to pass through the villages of Tecumseh and Clinton, to the village of Manchester, in

the county of Washtenaw. The Michigan Southern Railroad was to construct and put in operation its road from Hillsdale to Coldwater within four years, and from Coldwater to the St. Joseph river within eight years, and from the St. Joseph river to Niles within twelve years, and within three years put in operation the Tecumseh Branch to the village of Jackson, along the line of railroads formerly authorized to be constructed by the Jacksonburg & Palmyra Railroad Company. The act further provided that the line of railroad thus completed should constitute a continuous line of railroad from the waters of Lake Erie, in the city of Monroe, to Lake Michigan. The scope of the act, therefore, was to build a line of railroad across the State from east to west, through the several places named, and to complete the branch from Tecumseh to Jackson. It was this company, organized to construct and operate this road, to which the act of 1846 applies. The act of 1855 authorized the Michigan Southern Railroad Company to consolidate with the Northern Indiana Railroad Company, but in no manner changed the rate of taxation. *State Treasurer v. Auditor General*, 46 Mich. 224. Afterwards, the consolidated company organized under the name of the Lake Shore & Michigan Southern Railway Company. Thereafter the complainant company leased or otherwise acquired the control of the railroad extending from White Pigeon, St. Joseph county, to the city of Grand Rapids, and has since operated it in its own name. It was no part of its original line, and it is not disputed that the portion from Kalamazoo to Grand Rapids was originally known as the " Gardner Road," and was organized under the general law of this State.

Whatever the rights of the complainant company may be under the act of 1846 as to taxation, that act cannot be made applicable to this leased road, it being organized under the general railroad law. The exemption from taxation

under the act of 1846 was a special privilege granted to the Michigan Southern Railroad Company, and it cannot be extended to such lines as that company might thereafter lease and operate, which were organized under the general railroad law of the State. In fact, the rule seems to be much narrower than this; that is, that the exemption from taxation must be construed to have been the personal privilege of the very corporation specifically referred to. In a note to Cooley on Taxation (2d ed. p. 212) it is said (quoting from *Railroad Co. v. Railroad Commissioners*, 112 U. S. 609):

" This salutary rule of interpretation is founded upon an obvious public policy, which regards such exemptions as in derogation of the sovereign authority and of common right, and, therefore, not to be extended beyond the exact and express requirement of the grants construed *strictis-simi juris.*"

In the case cited it appears that the railroad company exempt from taxation had attempted to transfer its franchises to another corporation, which therefore claimed the exemption, and filed its bill to restrain taxation. The bill was dismissed, the Court saying:

" The exemption from taxation must be construed to have been the personal privilege of the very corporation specifically referred to, and to have perished with that, unless the express and clear intention of the law requires the exemption to pass as a continuing franchise to a successor."

No such intention can be found in the statute of 1846.

It is claimed, however, that, under the general railroad law of this State, this property cannot be made liable for local improvements of this character. It is provided by the general railroad law (How. Stat. § 3360) that a tax shall be paid by every company formed under its provisions to the State Treasurer, based upon a percentage of the gross income of the company, and that the tax so paid

"shall be in lieu of all other taxes upon the property of such companies, except such real estate as is owned and can be conveyed by such corporation under the laws of this State, and not actually occupied in the exercise of its franchises, and not necessary or in use in the proper operation of its road." It is contended that the words "in lieu of all other taxes" preclude the levying of such assessments for local improvements.

We are satisfied that this contention cannot be sustained. As said by Mr. Justice COOLEY:

"It is a very just rule that, when an exemption is found to exist, it shall not be enlarged by construction. On the contrary, it ought to receive a strict construction; for the reasonable presumption is that the state has granted in express terms all it intended to grant at all, and that, unless the privilege is limited to the very terms of the statute, the favor would be extended beyond what was meant." Cooley, Tax'n (2d ed.), p. 205.

Speaking of local assessments, the learned author says, on page 207:

"The most striking illustration of the rule of strict construction of exemptions is seen in the case of special assessments for local improvements, such as the paving and repair of streets, etc. It is almost universally held that a general exemption from taxation will not extend to such assessments. In the leading case, the words of the exemption were that no church or place of public worship 'should be taxed by any law of this state.' Upon this the court remarked: 'The word "taxes" means burdens, charges, or impositions put or set upon persons or property for public uses, and this is the definition which Lord Coke gives of the word "talliage" (2 Inst. 232); and Lord Holt, in Carth. 438, gives the same definition, in substance, of the word "tax." The legislature intended by that exemption to relieve religious and literary institutions from these public burdens, and the same exemption was extended to the real estate of any minister, not exceeding in value $1,500. But to pay for the opening of a street in the ratio of the benefit or advantage derived from it is no burden. It is no "talliage" or "tax," within the mean-

ing of the exemption, and has no claim upon the public benevolence.'"

Judge Dillon, in his work on Municipal Corporations (§ 777), speaking of the strictness with which these statutes are construed, says:

"Although an 'assessment' is in the nature of a tax, and is authorized by or is a branch of the taxing power, yet a general statute exempting certain property—as, for example, churches—from 'taxation by any law of the state' does not exempt it from liability for a street assessment." *In re Nassau Street*, 11 Johns. 77.

It was held in *State v. City of Newark*, 27 N. J. Law, 185, that a railroad charter exempting the company, in consideration of the payment of a certain tax, from any " other or further tax or imposition" upon it, does not exempt it from liability for an assessment upon houses and lots owned by it, and benefited by the opening and widening of a street; but that the corporation cannot for such a purpose be assessed without reference to the special benefit conferred upon property owned by it, as such an assessment would be in fact a tax, from which it is exempt. See, also, *Railroad Co. v. City of New Britain*, 49 Conn. 40; *City of Ludlow v. Trustees*, 78 Ky. 357.

But Judge Dillon says (§ 778):

"Aside from the rule of strict construction which applies to exemptions from taxation, the cases cited in this and in the previous section will show that there is, in their ordinary use, a recognized *difference between the words 'tax' and 'assessment,'* and that the one does not always or usually include the other. Thus, a constitutional provision that 'taxation shall be equal and uniform throughout the state' does not apply to local assessments upon private property to pay for local improvements. So a provision of the constitution of a state which requires 'the rule of taxation to be uniform,' in connection with another provision that 'it shall be the duty of the legislature to provide for the organization of cities, and to restrict their power of taxation, *assessment,* etc., so as to prevent abuses in *assessments* and taxation,' is construed not to apply to special *assess-*

*ments* by municipal corporations, made by authority of the legislature, for local improvements,"—citing *Weeks v. City of Milwaukee,* 10 Wis. 242.

It is evident that the great weight of authority upholds the doctrine that assessments for local improvements are not within the general exemption from taxation. Under the general railroad law of this State, the taxes mentioned are such burdens, charges, or impositions as are put or set upon persons or property for public uses; and this law has no reference to special assessments for local improvements in the ratio of the benefit or advantage to be derived from them. It is apparent from the statements in the bill that certain benefits are derived to this property by the improvement made. The proportion of these benefits is determined by the local officers.

But a more serious question is raised by counsel for complainant. It is insisted that the mode of collection of the tax fixed by the charter cannot be adopted and carried out as against the complainant, a railroad corporation. The proceedings prescribed by the charter for the collection of the taxes are as follows: After the assessment roll has been made and confirmed by the common council, it shall be delivered by the city clerk to the treasurer of the city. Ninety days after the receipt of the assessment roll, the treasurer shall return it to the city clerk, with a list of the real estate on which the assessment has not been paid, stating the amount of the tax and collection fees on each parcel, and the names of the persons to whom assessed. Within 30 days after the return of such list, the clerk shall cause the list to be published in a newspaper, with a notice of sale. The marshal shall attend the sale, and act as auctioneer. If no person bids the amount of the assessment, the lands shall be struck off to the city of Grand Rapids. No bid for less than the assessment, fees, and expenses, with interest, shall be received; and the land

may be redeemed within one year on payment of the amount for which it was sold, with interest from date of sale at 25 per cent. If not redeemed, the mayor shall execute a deed to the purchaser. The city is empowered to hold, occupy, enjoy, use, possess, lease, incumber, and convey lands bid off to it at such sales as fully and completely as a natural person. At the time of this assessment, no other means were provided by the charter for the collection of such assessments. It is claimed by counsel that a railroad is an entirety, and cannot be cut up and taxed and sold for taxes in parcels; that such a proceeding would result in a destruction of the franchise, and destroy the availability of the road to the public, who are entitled to its benefits as a means of transportation.

In *City of Detroit v. Detroit City Railway Co.*, 76 Mich. 421, 427, it was said:

" But these tracks are only special adaptations, for a particular use, of the surface of public highways, and, under our laws concerning levy and sale on execution, each track would be sold as a whole to the bidder for the shortest term of years to collect tolls for the use of it. * * * The right to use the tracks is inseparable from the franchises, and, it not being taxable as land, it should properly be taxed as an entirety to the corporation."

In *Hackley v. Mack*, 60 Mich. 591, 604, it was said:

" We have no law that we have yet discovered, and certainly none has been pointed out to us, which authorizes the sheriff to levy upon the track or road-bed of a railway, even against the corporation. If any levy can be made upon the property of the company, aside from such goods and chattels as may be found and seized and taken into custody by the sheriff, it is only on the franchise of earning tolls, as provided by the corporation laws."

In *Applegate v. Ernst*, 3 Bush, 648, the court said:

" The railroad, from one end to the other, is an entirety, and as a whole only may be subject to taxation or coercive

sale. Fragmentary taxations or sales might be unjustly vexatious and injurious to the owners, pervert the destination of the road, *and disturb the public use and interest.* To avoid such evils and absurdities, the law treats a railroad and all its appurtenances as one entire thing, not legally subject to coercive severance or dislocation. In that consolidated character it must be taxed for state revenue, and cannot be a fit subject for local taxation by the separate counties through which it runs."

In the case of *Georgia v. Railroad Co.*, 3 Woods, 434, 438, Mr. Justice Bradley, speaking in reference to a tax levy made on the depots, freight houses, passenger houses, and offices of the company for taxes due the state, says:

" It cannot be supposed that the legislature, in authorizing its construction, and granting peculiar franchises for its operation and use, ever intended that execution creditors might levy upon parcels of it, and cut it up into sections, and destroy it as a great public thoroughfare. Such a supposition seems to us preposterous. Suppose a mile of the road should be levied on and sold, would the purchaser have a right to fence it in, and take up the rails and cross-ties, and plant it, and thereby destroy the railroad? Could this be done without contemning the power of the state by which it was created and made a public highway? We think not."

In *Porter v. Railroad Co.*, 76 Ill. 561, it was held that, if a railroad was to be assessed at all, it must be as an entirety.

These cases arose under a claimed power of taxation by the state or by counties, or attempted levies under executions, and not under local assessments; but the reasoning is equally applicable against sales for local assessments where the attempt is made to collect by sale of the road-bed, or, as in this case, the freight house, road-bed, and right of way.

It is said, however, that this was a terminal of the road, and the rights of the public could not be affected by the sale of such terminal. We cannot accede to this. The

sale of the freight houses and terminal of right of way and tracks might seriously affect the business of the company and the rights of the public. In *Railroad Co. v. Trustees*, 7 Hun, 652, an assessment was made upon a part of the road-bed of plaintiff for benefits in opening a street. Proceedings were had to set aside the assessment; and it was held that the defendant could not sell the entire road-bed, nor any lands necessarily used by plaintiff for the purpose of its franchise. The case was, however, ruled as coming within section 59, chap. 277, Laws of 1864, defining and limiting the powers of the trustees.

It is suggested, though not strenuously contended, by counsel for defendants, that though no sales may be made of the real estate assessed for the purpose of paying this tax, yet the assessment against the property is valid, and may now be collected from the personal property of the complainant, under and by virtue of the amendment to the city charter in 1893, contained in title 6, § 10, Act No. 418, Local Acts of 1893. . That section provides:

"At the time of the delivery of the assessment roll to the city treasurer, the mayor shall attach his warrant thereto, commanding him to collect the assessment therein contained, together with the fees hereinbefore prescribed, within 90 days from the date thereof; and further commanding and authorizing said treasurer, when he may deem it necessary so to do, to levy and collect the same by distress and sale of any personal property upon such premises belonging to the premises chargeable to said assessment."

Just what personal property, there may be "upon such premises belonging to the premises chargeable to said assessment" it is difficult to perceive; or just what this provision means is difficult of ascertainment. If there were a general clause in the charter authorizing the collection from the personal property of the corporation, we could see no difficulty in enforcing the collection, as we are of the

102 Mich.—25.

opinion that though the lands and premises assessed cannot be sold for the tax, for the reasons before stated, yet the assessment for the local improvement· is valid. The only question in this case is the mode of collection. Whether there is any law under which the city can now proceed for the enforcement of the payment of the tax is doubtful. None has been pointed out, and it may need further legislation· on the subject to enable the city to collect.

The decree of the court below must be reversed, and decree entered here in favor of complainant, setting aside the sale of the premises, and releasing the levies under the tax warrant as to the other years. The assessment for benefits will not be disturbed, but will stand as a valid and subsisting assessment upon the property for the improvement thus made. The relief granted is without prejudice to the defendant city to proceed to the enforcement of the assessment in such mode as it may deem best.

McGRATH, C. J., GRANT and HOOKER, JJ., concurred. MONTGOMERY, J., did not sit.