[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on November 30, 1991, a total of 7 years. By complaint dated January 19, 1998, the Wife instituted this action claiming a dissolution of marriage, custody, alimony, child support, exclusive possession of the marital home, equitable distribution, and other relief. On September 28, 1998, the court granted the plaintiff permission to cite in the third party defendant, Charles A. McKee, who is the Husband's father. In the second count of her amended complaint, the Wife alleges that the Husband fraudulently conveyed the marital domicile to the Father and seeks an order setting aside the transfer and a CT Page 4606 transfer to her of all or part of the equity.
The Husband and Father both filed answers denying the allegations in the second count. The Husband also admitted all of the allegations in the first count. By agreement, the trial of the case was bifurcated to address sequentially the fraudulent conveyance issue and then matters pertaining to the dissolution of marriage. All parties were heard over the course of three days. Lengthy memorandums addressing the fraudulent conveyance issue, filed by the Wife's and the Father's counsel at the conclusion of the evidence, were also reviewed by the court.
Two children issue of the marriage were born to the Wife since the date of marriage, to wit: Milea McKee, born January 27, 1994, and Paul Charles McKee, born August 22, 1995. The Wife testified that the children were in good physical health but that Paul was having considerable problems in school which gave her much concern over his emotional condition. To the considerable credit of the parties, they were able to resolve the parenting issues by agreement which was reduced to a writing dated January 22, 1999 and is entitled "Stipulation."
The Wife is in good health but suffers from a weight problem. She had carpel tunnel surgery in 1996 which led to a $16,000 insurance settlement. The money was used for family obligations and attorneys fees in the instant action. She is 38 years of age and has a bachelors degree in accounting. The Husband is 42 years of age, has one year of college, and also suffers from a weight problem. He further claims to suffer from sleep apnea, a heart condition, two hernias, gout, and extreme loss of energy. Despite doctors' orders to the contrary, he smokes, drinks, and ignores his diet. He does maintain full time employment.
The Wife was employed throughout the marriage as an accountant currently earning approximately $38,000 annually. While the Husband claimed she also earned additional income from doing personal tax returns, such income was nominal and, given her responsibilities to the children, would be difficult to come by in the future. The Husband was employed throughout the marriage as a customer service representative currently earning approximately $35,300 annually. In addition, his father generously makes contributions to him each year. In 1998 cash contributions totaled $5,300. During the marriage, gifts and cash in excess of $100,000 were received from the father. In Unkelbach v. McNary, 244 Conn. 350 (1998) the Supreme Court stated "gifts CT Page 4607 received on a regular and consistent basis, regardless of their source, are includible in income in the context of dissolution proceedings where financial orders are being determined."
At the time of the marriage, it was disclosed that the Husband owned a residence at 143 Old Dyke Road in Trumbull which he had purchased two years before. The Father was the source of funds for the purchase. A handwritten loan agreement was dated May 4, 1989 (third party defendant's Exhibit # 4) was signed and called for the Husband to pay the Father the sum of $240,000 with interest as provided in the agreement. The agreement was not witnessed, notarized, or recorded and no payments were ever made on it. After the marriage, the Husband and Wife took up residence in the property in which the Wife and children continue to reside. Real estate taxes and most major repairs were paid for by the Father.
On July 25, 1996, eighteen months before the institution of the instant action for dissolution of marriage, the Husband quit claimed his interest in the property to the Father and the Father forgave the balance owing under the loan agreement. The deed recited "no consideration" as did the conveyance tax form, and, indeed, no transfer tax was paid. In 1998, after a routine audit, the Husband received a written inquiry from the Connecticut Department of Revenue Services (DRS) advising of a gift tax liability. Upon further investigation and review of various documentation, the DRS issued a Tax Recomputation assessing a conveyance tax of $1,539.39 (third party defendant's Exhibit # 7). Testimony of the Father and Husband unequivocally stated that the quid pro quo for the transfer was the forgiveness of the loan. On the other hand, testimony of the Wife on the existence of the loan and the ownership of the property was equivocal. She said that she was aware that the Father had made substantial gifts to the both Husband and Wife, was aware that the property had been listed for sale in 95 and 96, offered no protest to the transfer in July of 96, continued to receive substantial gifts from the father in 1997, and in September 1997 sent the Father a thank you note for "letting her family live in the property." It should be noted that the fair market value of the property at the time of transfer was less than the amount of money advanced by the Father for the purchase of the property.
The Wife now alleges that the transfer was fraudulent in violation of Conn. Gen. Stat. Sec. 52-552e. The burden of proof in such actions is by clear, precise, and unequivocal evidence CT Page 4608 (Albuquerque v. Albuquerque, 42 Conn. 284, 291 (1996). After listening to the testimony and reviewing the documentation, it cannot be said that the Wife met this heavy burden by showing either constructive or actual fraud. Accordingly, the relief requested in the second count is denied.
Assets of the parties include a Cancun timeshare which by agreement was to be transferred to the Wife, a 1992 GMC, 1995 Ford, miscellaneous household items, small bank accounts, some stock, retirement assets and the Husband's pension plan. On his financial affidavit, the Husband failed to list any value for his pension but Plaintiff's Exhibit A indicates he has a benefit of at least $256.75 per month. The Husband is also a co-beneficiary with 4 other siblings of a second-to-die trust established by the Father. Other than the life insurance policy on the Father's life which funds the trust, no evidence was introduced of any other assets in it (Plaintiff's Exhibits J K.
The Husband lists two debts on his affidavit totaling $1,011 and the Wife lists numerous debts totaling $6,512 excluding counsel fees on hers. Pursuant to an April 30, 1998 court order, the Husband was to pay $1,234.27 and the Wife $664.62 on a 1997 IRS tax liability. Also, there remains a balance of $149.97 due the Wife pursuant the same court order. Both orders survive the granting of this decree.
It would appear that the parties lived beyond their means throughout the marriage. If it were not for the generosity of the Father they would have been in worst straits than they are.
It would serve no useful purpose to chronicle the causes for the marriage breakdown which is clearly irretrievable. There was apparently a I substantial lack of communication, extensive name calling, financial problems, health problems, and differences concerning child rearing. Fault is in equipoise.
The court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders.
 ORDERS
Dissolution of Marriage
CT Page 4609
The marriage is dissolved on the grounds of an irretrievable breakdown.
Custody and Visitation
The parties are awarded joint legal custody of the minor children pursuant to the terms and conditions of the stipulation of the parties dated January 22, 1999, a copy of which is attached hereto and incorporated herein by reference.
Child Support
The Husband shall pay to the Wife child support in the amount of $200 per week, pursuant to an immediate wage withholding order, which is consistent with the Child Support Guidelines. Child support shall continue until a child shall attain the age of 18 years, unless said child is still enrolled in high school, whereupon it shall continue until graduation, but in no event beyond a child's nineteenth (19th) birthday.
Medical Insurance and Expenses
The Husband shall continue to maintain the medical and dental insurance he now has in force for the benefit of the minor children. All un-reimbursed medical and dental expenses shall be equally shared by the parties. The provisions of Conn. Gen. Stat. Sec. 46b-84 (c) shall apply.
Life Insurance
The Husband shall continue to maintain the Northwest life insurance policy insuring his life in the amount of $9,651 naming the Wife as beneficiary, in trust for the minor children, until he no longer has any obligation to her for support. Likewise, he shall name her beneficiary on his group life insurance in the amount of $140,000. Upon reasonable request, he shall furnish the Wife with satisfactory evidence that he is insured as required. The obligations under this paragraph shall be subject to modification.
Alimony
The Husband shall pay to the Wife the sum of one dollar per year as alimony. CT Page 4610
Division of Assets
The assets of the parties shall be divided as follows:
a. The Wife shall retain the 1995 Ford and the Husband the 1992 GMC automobiles.
b. The Wife shall retain the Cancun timeshare.
c. All of the furniture and personal possessions now located in the former marital domicile shall remain the property of the Wife with the exception of the old drive-in speakers, malt mixer, personal jewelry, personal collectibles, old iron bed, 2 glass book cases, and cd's which shall belong to the Husband and which he shall remove within 30 days from date.
d. Children's pictures, videos and other memorabilia are to be divided equally.
e. The parties shall each retain their respective bank accounts, investment accounts, IRA's, 401k plans, and stock holdings.
f. The Husband's Hubbell pension plan benefit as of this date shall be divided equally pursuant to a Qualified Domestic Relations Order.
Liabilities
Each party shall be solely responsible for the liabilities shown on their respective financial affidavits with the exception of Steinbach which shall be the Husband's sole responsibility.
Counsel Fees
The Husband shall pay to the Wife $2,500 in counsel fees within 30 days from date.
Taxes
By April 15 of each year, until there is no longer any financial obligation for child support or alimony, the parties shall exchange their complete IRS returns in order to determine that the payments are appropriate under the circumstances then CT Page 4611 existing.
Miscellaneous
Each party shall sign any necessary documents to effectuate the orders contained herein. Plaintiff's counsel is to prepare the judgement file, have it certified by both defendant's counsel, and file it with the court within 30 days.
CUTSUMPAS, J.