THOMAS E. ALLEN et al., appellants,

*v.*

. ELIAS S. WILLIAMS et al., respondents.

1. Where a statute relating to drainage authorized the commissioners to purchase a mill property, and such commissioners, having previously made an assessment to meet the general expenses of the scheme, entered into a contract to purchase under a large penalty; and not being in funds at the day for performance, in consequence of the non-payment, in part, of such assessment, advanced their own moneys to make up such purchase-money—*Held*, on bill filed, that they were entitled to be re-imbursed by an equitable enforcement of such assessment.

2. When persons acting for others under statutory authority advance moneys in good faith and beneficially for the persons whom they represent, re-imbursement of such moneys will, as a general rule, be allowed in a court of equity.

Allen *v.* Williams.

3. The claim in this case held to be an equitable one, and one which, being equitable, and also for an unliquidated amount, could not be enforced by *mandamus.*

On appeal from a decree of the chancellor, whose opinion is reported in *Williams* v. *Allen, 5 Stew. Eq. 485.*

*Mr. B. Williamson,* for appellants.

*Mr. H. C. Pitney,* for respondents.

The opinion of the court was delivered by

BEASLEY, C. J.

The facts upon which the bill in this case rests are fully stated in the opinion of the chancellor, and consequently it does not appear to be necessary at this time to do more than refer to those which seem to me necessary to render perspicuous the views about to be expressed on the several points raised in the argument before this court.

The object of the bill is to enforce certain assessments that were made by the three original commissioners by virtue of an act entitled "An act to enable the owners of swamps and marshy lands lying on the upper Passaic and its tributaries, in the counties of Morris and Somerset, to drain the same," approved April 21st, 1868, (*P. L. of 1868 p. 1181*). The validity of this assessment is not in question, as it has already been accredited by a decision of this court. Having made this assessment, these commissioners entered into a written contract for the purchase of a certain mill property, known as Dunn's mill, and therein bound themselves, in a penalty of $3,000, to pay for the same within a time stipulated. On a bill exhibited by the present defendants, calling in question the power of these commissioners in this respect, the chancellor justified such exercise of authority, and, " with the consent of the parties in open court, ordered the commissioners to hold such mill property in trust for the purposes of said act." Prior to the making of this decree, the time fixed for the payment of such property, by the terms of their contract, having

arrived, and not having collected from the assessment before mentioned sufficient moneys for such indebtedness, the commissioners made up the deficiency out of their own resources, and thus obtained a title for the property in question. At this stage of these proceedings, these commissioners were superseded by the appointment of their successors, and after that event, the statute under which these proceedings had taken place was repealed, saving, however, all rights which had been acquired under it. It has been already adjudged that after this repealing law, the right to enforce and make assessments requisite to settle all outstanding legal liabilities resided in the new board of managers. Two of the original managers have died, and the complainants are the survivors and the representatives of those deceased, their object being to levy, through the aid of the court of equity, on the lands originally assessed by them, so much of the assessment as will be sufficient to re-imburse them for the moneys paid by them out of their private means in the purchase of the mill property before mentioned. These are some of the facts extracted from the bill, which has been demurred to.

The claim to relief thus made is opposed, principally, on two grounds, the first of these being, that the advance of the moneys of which re-imbursement is sought was a breach of duty on the part of these managers, and consequently that they have no standing to ask for aid from a court of equity. In support of this position, it is insisted that the statute in question does not confer upon these officers the right to borrow money, and that the exercise of such authority is contrary to its spirit and policy.

So far as the facts are concerned, I think this position well taken, for I can find in none of the provisions of this law, nor in its general object, any appearance of an authority to resort to loans for the purpose of carrying into effect the statutory scheme. The plan upon which this improvement was to have been made is obviously based on moneys in hand derived from assessments, and it must, therefore, be conceded that when these officers paid the consideration, in part, for these lands with their own moneys, they did an act for which they can point to no authority in the law under which they were acting. But it does not follow from

Allen v. Williams.

this concession that these land-owners, for whom these complain-
ants were agents in this matter, can take to themselves the benefit
of this purchase without paying for it. The bill of complaint,
in this respect, alleges that these premises were purchased "at
the wish and desire" of these land-owners, and it was afterwards
decided in the chancery suit already referred to, that such pur-
chase was one of the specified duties imposed on these complain-
ants by this statute, and by the same clause it was directed, with
the consent of these land-owners, who were defendants in that
suit, that the complainants should hold said property in "trust
for the purposes of said act." When this decision was made, the
moneys now in question had been advanced by these managers,
and when, therefore, in that position of things, these defendants
assented to a decree which vested in them the beneficial use of
these lands, it must be inferred that they intended to pay for it.
Such an assent must be deemed an approval, in a most conclusive
form, of the entire transaction embraced in this purchase. Nor
do I think that in the absence of such ratification, these com-
plainants would have been destitute of a right to reclaim these
moneys. They were officially bound to acquire this property,
and accordingly they entered into an agreement to take the title
to it in a designated time, binding themselves to comply with
such contract under a penalty of $3,000. This engagement
appears to have been in all respects reasonable, for they had
already made an assessment which, if paid in due course, would
have put them in possession of the requisite funds. These just
expectations were not realized, in consequence of the default of
these defendants not paying their quotas of the assessment in
question. The consequence was, that the complainants were
placed in the dilemma of either losing the land, which it was
their duty to obtain, and of subjecting their principals to a heavy
loss under the penal clause in the agreement, or of raising the
money out of their private means. It does not seem to me that,
in adopting the last branch of this alternative, they acted in a
manner that is open to the faintest hostile criticism. Such con-
duct seems to me not only unobjectionable, but praiseworthy,
and certainly the censure of those who, by their failure to pay

their just dues, had necessitated it, is entitled to no consideration. These payments can hardly be called voluntary, for they were made under the constraint of an unexpected emergency. They were plainly beneficial to the body of persons represented by these managers, and moneys expended under such conditions can, upon the ordinary principles of equity, be reclaimed by the agent making such outlay. Such is the rule often exemplified in the dealings of courts of equity with the accounts of trustees. In that particular, the doctrine is, that all disbursements which the court, on application, would have sanctioned, will be affirmed if the trustee makes them without order, and that expenditures for the good of the estate will, under any ordinary circumstances, be allowed to him. In *Gibson* v. *Bott, 7 Ves. 150,* the court said it would protect an executor in trust in doing, without an order, what it would order him to do. The following cases exhibit other applications òf the principle : *Fountaine* v. *Pellett, 1 Ves. 343 ; Murry* v. *De Rottenham, 6 Johns. Ch. 52 ; Mathews* v. *Dragand, 3 Desauss. 25 ; Altemus* v. *Elliott, 2 Barr 62.* The present case, with respect to the matter now in hand, calls for a settlement founded on a principle quite as liberal as is this equitable doctrine. The disbursement in question was constrained by the default of the persons who now except to its enforcement, while, at the same time, they have accepted its benefits; it was made in good faith, by statutory officers, in behalf of those whose interests had been confided to their keeping, and it would be strange indeed if such circumstances would not lay, in a court of equity, a claim for repayment.

In connection with the act of the complainants in purchasing this mill property, their subsequent conduct with respect to it was strongly condemned by the counsel of the defendants, in his argument before this court. The part of such conduct that was deemed objectionable was the act of the complainants in dealing with this property after the expiration of their own term of office, and after the appointment of their successors. After these events, what the complainants did was this, they tore down the mill-dam and sold the mill thus mutilated; it is urged that, being out of office, this was a gross breach of trust. But this, it seems to

me, is not a feature that will injuriously affect these complainants' right to a standing in equity, and it is that right alone that, on this demurrer, is drawn in question. Grant that it be true that these managers have despoiled and squandered the trust estate, how does it follow that from such an incident, they will lose their lien on the assessment in question, if they can show, after all deductions for mistakes or misconduct in regard to the property that was in their hands, the balance is in their favor? At the present time this court is not called upon to decide whether or not there has been any abuse of their authority on the part of these complainants; that is a matter that will be settled in the progress of this cause. I can see no solidity in the contention that, because of the misconduct of these agents, they have forfeited all claim to enforce this lien, no matter what the amount of the loss of the *cestuis que trust* may be relatively to the disbursements by their trustees. If the latter amount exceeds the former, the complainants, in my opinion, have a right to have such difference raised by means of the assessment in question, in their favor, by the court of equity.

The remaining objection to the right to exhibit this bill consists of the position that the complainants have an adequate and easy remedy at law, by a *mandamus*, to compel the present managers to raise by sale, under the original assessment, the moneys in question. But even on the assumption that the complainants' rights could have been effectuated by the process indicated, it does not follow that such process must, of necessity, be resorted to. The test of the right of the complainants to pursue their present course of law, is the consideration whether the subject matter of the litigation is, from its inherent nature, of equitable cognizance, for if this be so, such jurisdiction cannot be ousted by the fact that a common law remedy to enforce such right also exists. And that this particular matter now in controversy is of equitable cognizance, appears to me very plain. An action in a common law court would not have lain for these moneys. It is not a claim *in personam*, but *in rem*, for the statute authorizing this procedure does not make these defendants personally liable, but imposes the burthen of the cost of the improvement on a

definite portion of their lands.    Also, the demand for the moneys advanced by those managers has the qualities, not of a legal, but of a conscionable right.    Its elements are these: by the purchase of this mill property, the vendor of such property became vested with a lien in equity upon the lands of the defendants, embraced in the assessment, as security for the payment of the consideration-money, and when the complainants paid that money in ease, and for the benefit of, the defendants, and in a due discharge of their official duty, they, by that act, became entitled to be subrogated to the rights of suit for and in such security; and the right to this subrogation is plainly cognizable in a court of chancery.    I am not aware that such a right could be executed under the forms of a court of common law.    That it could not have effect given to it by the process of *mandamus*, seems very evident.    If the right to subrogation was a legal right, and the amount of the complainants' claim was not in dispute, then, indeed, an order from the supreme court contained in its prerogative writ, might well go to the present commissioners to raise such definite amount by enforcing the assessment.    But, as has been said, subrogation is an equitable contrivance, and the amount of the claim is so far from being admitted, that, as we have seen, the defendants insist that deductions, to an unascertained extent, must be made from the moneys advanced by these managers.    In proceedings on *mandamus*, how could such questions be settled?    There seems to be no precedent for such an attempt, and it is altogether inconsistent with the nature of the remedy, which is only apposite when the duty the performance of which is sought to be enjoined, is of a fixed and definite character.    I know of no instance in which a *mandamus* has been issued for the purpose of raising an unliquidated amount of money.    In the case of *Regina* v. *Clark*, *5 Q. B. 887, 894*, it was explicitly decided that a *mandamus* would " not go for the payment of a sum not ascertained."

For these reasons, I think the decree appealed from should be affirmed.

*Decree unanimously affirmed.*