(60 Misc. Rep. 145.)

MEAD et al. v. TURNER, Village President. et al.

(Supreme Court, Special Term, Westchester County. July, 1908.)

1. MUNICIPAL CORPORATIONS—COLLECTION OF TAXES—SUIT TO RESTRAIN—TAX-PAYER'S ACTION.

A taxpayer's action to enjoin municipal authorities from collecting a tax levied to pay the expenses of a public improvement and from entering into any contract for the improvement, etc., can be maintained only on clear proof that the authorities are about to act, or have acted, illegally or fraudulently.

2. SAME—POWER TO TAX FOR SPECIAL PURPOSE—PUBLIC IMPROVEMENTS.

Health Law, Laws 1893, p. 1519, c. 661, § 72, provides that, where the state board of health has made an order requiring one municipality to put in a sewer system for the protection of the water supply of another, the latter shall pay the cost of the system. To protect the water supply of a city, the city and a village entered into a contract that the village should install a sewer system within its own limits and the city would provide the outlet and disposal works; each paying for its own part. *Held*, that a village taxpayer could not enjoin the collection of a tax to pay the cost of sewers in the village, on the ground that the city was bound to pay the cost of the whole work, since the statute requiring the city to pay was not applicable; the state board of health having made no order.

3. SAME—SEWERS—POWER TO MAKE IMPROVEMENT.

The power of a village, under the village law, to construct a sewer system at its own expense, is not abridged by orders made by the board of health, under Health Law, Laws 1893, p. 1519, c. 661, § 72, authorizing the board to require the construction of a sewer for the protection of a water supply, etc.

4. SAME—JUDICIAL SUPERVISION.

The court, in a taxpayer's suit to enjoin the authorities of a village from collecting a tax levied for the construction of a sewer system and from entering into a contract for the construction of the system, has nothing to do with the wisdom of the action of the majority of the voters of the village adopting a proposition for the construction of a sewer system.

5. SAME.

Village Law, Laws 1897, p. 440, c. 414, § 260, providing that the board of sewer commissioners of a village shall, before taking proceedings for the construction of a sewer system, prepare a map and plan of a permanent sewer system, with specifications of connections and outlets, or disposal works, does not require the map and plan to embrace every lateral sewer which may become necessary with the growth of the village.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 827.]

6. SAME—CONTRACTS INVOLVING EXPENDITURES—SUBMISSION TO POPULAR VOTE.

Laws 1907, p. 888, c. 428, authorizing the city of New York and a village to enter into an agreement to provide the village with a sewer system, etc., does not provide how the village authorities shall proceed to carry out its part of the agreement, and the provisions of the general village law are applicable, and before levying any tax or issuing any bonds to carry out such agreement the village trustees must obtain special authority from the voters of the village in accordance with the village law.

7. SAME.

>A proposition submitted to and adopted by the voters of a village, at an election held for the purpose, which authorizes the trustees thereof to construct a proposed sewer system at a maximum cost of $100,000, and which authorizes the trustees to raise $59,800 by the issue and sale of village bonds, gives by necessary implication power to the trustees to raise the balance of the cost by taxation, and they may levy a tax of $40,200 for the construction of the system.

Action by Charles Mead and another against Isaac W. Turner, as president of the village of Mt. Kisco, and others. Heard on motion for temporary injunction. Injunction denied.

A. J. Adams, for plaintiffs.

Francis K. Pendleton, Corp. Counsel, for defendant city of New York.

Charles H. Banks, for other defendants.

MILLS, J. This is a taxpayer's action, brought to enjoin the village authorities of the village of Mt. Kisco, Westchester county, from issuing a warrant for the collection of a tax of $40,200, which the village authorities have attempted to levy to pay part of the expenses of constructing a system of sewers in said village, and enjoining them from entering into any contract for the construction of such sewers or issuing any bonds therefor. The plaintiff now moves for a temporary injunction to the above stated effect.

Is is elementary law governing such actions that the same can be maintained only upon clear proof that the municipal authorities sought to be enjoined are about to act or have acted illegally or fraudulently. There is nothing in the papers here presented to indicate that the village trustees have acted or propose to act in any manner in bad faith. Therefore the sole question presented is whether or not their action, already in part taken and further contemplated, is without legal authority. The plaintiffs claim that such action is unwarranted by law, and base their contention upon three grounds, each of which is hereinafter discussed.

The first ground: This is that under section 72 of the health law (Laws 1893, p. 1519, c. 661) the city of New York should pay the entire expense of furnishing the village of Mt. Kisco with a system of sewers. It appears that two small brooks pass through the territory of said village and empty into the Croton river, or rather at the present time the Croton Reservoir, which constitutes a large part of the water supply system of New York City. Under statutory authority the city some years ago acquired land along those brooks for the protection of its water supply, with the particular purpose of keeping out of the brooks sewage and waste from the houses within the village. Thereupon negotiations ensued, between the city authorities on the one hand and the village authorities on the other, lasting some years, respecting what should be done to take care of the sewage of the village, inasmuch as those brooks constituted the natural drainage of the village territory. Finally, at the solicitation of both the city and village authorities, the Legislature of 1907, on the 5th of June of that year, passed an act, known as chapter 428, p. 888, of the Laws of

1907, which authorized such authorities to enter into an agreement to provide the village with a proper system of sewage. Under the authority thus conferred the representatives of the city and village agreed upon a plan, the gist of which was that the city should provide for the disposal of the sewage of the village by the construction of proper outlet and disposal works, and the village itself should construct, within its limits, the system of sewers necessary to receive the sewage and deliver it to the outlet works to be constructed by the city. The proposition of authorizing the village trustees to construct the village part of the plan was submitted to a special election held within the said village on the 16th of November, 1907. The proposition was, at such election, adopted by a majority vote, and the following January a written agreement to the general tenor above stated was entered into between the city and the village.

I do not think that the plaintiffs' objection here is well taken. It does not appear from the proofs before the court that the state board of health ever took action; that is, made any order or regulation under section 72 of the health board. Therefore it does not appear that the provisions of that section ever became applicable to this situation. In the next place, if the state board of health had issued an order or regulation under said section 72, I do not perceive that that fact would alter or abridge the power of the village under the general village law to construct a sewer system at its own expense. With the question of the wisdom of the action of the majority of the voters at the special election, or of the trustees in exercising the power thereby conferred, the court here in this action has nothing to do.

The second ground: This is to the effect that the village trustees have failed to comply with the provisions of section 260 of the village law (Laws 1897, p. 440, c. 414), in that the map or plan of the sewer system for such village is not sufficiently detailed. This claim rests solely upon allegations made in the eighth division of the complaint, solely upon information and belief and without specification of detail as to the alleged defects. The opposing papers deny these allegations. The court cannot here find that this objection is well taken. I do not think that the provisions of section 260 of the village law should be construed to require the map and plan to embrace every lateral sewer which may become necessary with the growth and development of the village. It would, indeed, be almost impossible, or at least well-nigh impracticable, to prepare a plan with that degree of absolute completeness.

The third ground: This is that, while the proposition submitted to and adopted at the special election held in November, 1907, authorized the issuing of bonds to the amount of $59,800, it did not authorize the levying of any direct tax of the sum of $40,200 which the village trustees have undertaken to levy and collect in a single year. It seems to me that the contention of the plaintiffs' counsel here, to the effect that the provisions of the general village law as to the raising of money by tax levy are applicable to the matter of constructing these sewers within the limits of the village, is sound and should be sustained. The provisions of the special act of 1907, above referred to, are quite general, and do not provide at all how the village authori-

112 N.Y.S.—9

ties shall proceed to carry out the village's part of the agreement to be made with the city, and I think the provisions of the general village law are applicable; that, in other words, before levying any tax or issuing any bonds for the purpose of carrying out such agreement on the part of the village thereunder, it was incumbent upon the board of trustees to obtain special authority so to do from the. voters of the village in accordance with the provisions of the general village law.

The proposition submitted to and adopted at the special election held on the 16th of November, 1907, in express terms authorized the board of trustees of the village to construct the proposed sewer system "at the expense of the village at large" at a maximum cost of $100,000, and further authorized that board "to raise the sum" of $59,800, "to be used toward the cost of constructing such trunk and lateral sewers, by the issue and sale of the bonds of said village," etc. The proposition contained no direct authority to the board of trustees to raise the balance of the total cost by direct tax, or to raise any sum in that manner. It seems to me, however, that the proposition must be construed as by necessary implication authorizing the board of trustees to raise the balance of such cost in the ordinary manner; that is, by taxation. The proposition empowered the board of trustees to build the system of sewers at a cost of not to exceed $100,000, of which $59,800 was to be raised by the issuing of bonds, necessarily, as it seems to me, leaving the balance of $40,200 to be raised by taxation. It is my opinion, therefore, that the proposition as submitted and adopted must be regarded as an authority to the board of trustees to make the tax levy here questioned.

It follows, from the views above expressed, that the motion for a temporary injunction must be denied, and the injunction granted in the order to show cause dissolved.