WARREN G. JOHNSTON ·ET AL. *vs.* THE CITY OF HARTFORD.

First Judicial District, Hartford, January Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The charter of the city of Hartford (17 Special Laws, p. 888) provides that no vote or resolution of the common council of the city, ordering a public work or improvement which shall require an expenditure of more than $25,000, shall be obligatory on the city unless approved by a majority vote of a city meeting duly warned and held for that purpose. *Held* that while a vote or resolution not so approved would not be binding on the city, nor require the performance of nor forbid any act, it did not follow that it was invalid or ineffective for any purpose.

Within the meaning of this charter provision, the paving of a city street

Johnston *v.* Hartford.

with asphalt or other improved or substantial pavement, as distinguished from repairs by macadamizing, is a public work or improvement.

By another provision of the charter of the city of Hartford (12 Special Laws, pp. 617, 618), the power to approve and order a pavement of a kind deemed proper, and to select the streets to be paved, has been transferred from the common council to the board of street commissioners, and it is provided that that board shall pass votes, to be submitted to and approved by the common council, ordering such pavement and assessing a share of the expense on abutting property. *Held* that this board was an agent of the city and State, deriving its powers not from the common council but directly from the State legislature, that it was the vote of this board, not the approving vote of the common council, which was the vote ordering the public work, and that this vote does not fall within the meaning of the charter provision relating to a vote of the common council ordering a public work or improvement.

Even if the action of the common council was voidable until approved by vote of a city meeting, and the city might have been restrained from proceeding with this assessment and improvement, nevertheless a property owner who stands by in silence and acquiescence and permits such improvement to be made, knowing of its progress and the intention to pay for it by special assessment including his property, and knowing of a defect in the proceedings, will be estopped from attacking the validity of the assessment in an action to restrain its collection or to cancel or discharge a lien based on it.

In the present case the plaintiffs—who were asking that a lien upon their property to secure the payment of an assessment of benefits for a street pavement be adjudged invalid and discharged because the vote of the common council concerning such pavement was not approved by a vote of a city meeting—had stood by during a year, and permitted the contract to be made, the work to be completed, the assessment to be laid, and the city's portion of it to be paid, meanwhile retaining all the benefits of the improvement, and had made no objection except by serving on the defendant an application for an injunction which was allowed to remain in court without being pressed. *Held* that by their conduct the plaintiffs had estopped themselves from attacking the validity of the assessment and lien.

The institution of an action which is not prosecuted diligently does not relieve a plaintiff of the charge of laches.

The common council ordered the board of street commissioners to advertise for bids for paving with asphalt, concrete, bitulithic, or other bituminous paving. The board advertised for bids for asphalt only. *Held* that it had complied with the order and had

also acted within the independent power given it (12 Special
Laws, p. 617) to select the kind of pavement it deemed proper.
The assessment was not rendered void or illegal by the failure of the
street-railway company to lay that part of the pavement which
it was obliged by law to lay, since the vote which ordered the
paving expressly excluded the cost of such part from the share
of the expense assessed against the property owners, and all that
part of the pavement for the expense of which the plaintiffs were
assessed had been finished, and their property was found to be
specially benefited in the sum named.

Argued January 5th—decided April 5th, 1921.

SUIT to secure an adjudication of the invalidity of
a street-paving assessment and of a lien filed by the
city therefor, brought to and reserved by the City
Court of Hartford, *Bullard, J.*, upon a demurrer to
the complaint, for the advice of this court. *Judgment
for defendant advised.*

*Arthur E. Howard, Jr.*, with whom was *Lawrence A.
Howard*, for the plaintiffs.

*Walter S. Schutz* and *Philip Roberts*, for the defendant.

BURPEE, J. In this reservation the advice of this
court is desired upon the issues of law raised by the
defendant's demurrer to the complaint. The prin-
cipal admitted facts are that in the summer of 1919
the city of Hartford, without petition therefor, caused
to be paved with asphalt a part of a street within its
original limits, called Wethersfield Avenue, not exceed-
ing four miles in length, in addition to pavement
petitioned for by property owners. Two thirds of
the cost of this pavement was assessed upon property
abutting on the line of the improvement, and one
third upon the city itself to be paid out of its treasury
upon the order of the common council. The street-
railway tracks of the Connecticut Company extend

through the middle of the street where the pavement was laid. The cost of paving the space within these tracks and two feet outside of the outside rails was deducted from the estimated cost of the whole work and excluded from the assessment. Of the "net estimated cost," the portion assessed upon the city by vote of the board of street commissioners approved by vote of the common council was $31,232.70; and to provide for this expenditure the common council at the same time made an extra appropriation of that amount and authorized it to be added, "for book-keeping purposes," to the annual appropriation made to the street department and charged to "permanent improvements." The portion assessed upon the plaintiffs, who are citizens and owners of abutting property especially benefited by the improvement, was $241.43. After the completion of the work and the assessment of benefits, the board of street commissioners, within the time limited by the city charter, lodged for record with the town clerk of Hartford a certificate of lien in the proper form. About July 1st, 1920, the plaintiffs gave written notice to the defendant to discharge this lien, but this request has not been complied with. Therefore the plaintiffs bring this action under § 5241 of General Statutes, asking that this lien be adjudged invalid.

The first issue of law raised by the demurrer relates to a provision of the city charter concerning the powers of its common council, which was first enacted in 1859, and re-enacted in 1917 in these words: "No vote or resolution of said common council ordering a public work or improvement which shall require an expenditure of more than twenty-five thousand dollars, shall be obligatory on said city unless approved by a majority vote of a city meeting, duly warned and held for that purpose." 17 Special Laws (1917) p. 888. It is ad-

mitted that the pavement laid on Wethersfield Avenue required an expenditure by the city of more than $25,000, and that the vote or resolution of the common council relating to it has not been submitted to or approved by any vote of a city meeting. The city contends that this vote or resolution was not subject to the restriction because "the paving of a street is not 'a public work or improvement' within the meaning of this provision" of its charter, and cites the decisions of this court in *New Haven* v. *Whitney*, 36 Conn. 373, in 1870, and *Colwell* v. *Waterbury*, 74 Conn. 568, 51 Atl. 530, in 1902; and relies particularly on the decision of this court in *Park Eccl. Soc.* v. *Hartford*, 47 Conn. 89, in 1879, in which this part of the defendant's charter was considered and interpreted according to the circumstances of that case. Respecting the first two cases referred to by the city, it must be noted that the method of improving streets therein considered was macadamizing, which was only "a means of maintaining or repairing a highway," and "not in any sense a public work or improvement." This has been the opinion and understanding in other municipalities of the State. Indeed, in the first charter of the city of Hartford, granted in 1784, the power to lay taxes for paving highways within its limits was expressly withheld from the freemen of the city unless previously authorized by the General Assembly; and no further provision specifically mentioning paving in this city was made by the legislature until 1893. During these hundred years and more, highway improvement with the material then in general use was considered and treated as "one of the ways by which the city might perform its duty of maintaining and repairing its highways," as it was described in *Colwell* v. *Waterbury*, 74 Conn. 568, 573, 51 Atl. 530. But the greatly increased traffic on city streets and the wear and tear on their surfaces

caused by new kinds of vehicles, such as the automobile and the motor-truck, in time made it apparent that a durable pavement was necessary and desirable for comfort and economy. So in 1893 a special law amending the charter of the city was passed, which gave its common council power to cause its streets "to be paved and repaved with paving material other than the macadam in general use"; and also the power, upon petition of two thirds of the owners of land abutting on a street or portion of a street to be paved or repaved, and after it had approved and ordered a pavement of the kind specified in their petition, to assess one third of the cost upon the city and two thirds upon abutting property, and to enforce the collection of such assessments by liens on the property benefited in the manner provided by the city charter "in the case of assessment for benefits arising from other public works and improvements." 11 Special Laws, p. 462. In an amendment of this Act in 1895 a section was added in which it was declared that it "shall be the duty of the city to pave with granite, asphalt, or other substantial pavement, and not including macadam, at least one-half mile of highway in each year, in addition to the amount petitioned for by the property owners." 12 Special Laws, pp. 617, 618. Here is a plain recognition of paving as a distinct work of a substantial and permanent kind, and differing in material and expense from street improvements with the macadam in general use before that time. Here, too, we find the expression of an intention to regard the new kind of pavement which might be laid thereafter, not as maintenance or repairs, but as public work or improvement. Twenty years later (17 Special Laws, 1915, p. 343), granite, asphalt and concrete pavement were enumerated among the kinds of improved or substantial pavement, for the cost of which assess-

ments might be made as in the case of other public works.

In the Special Laws of 1917, Vol. 17, p. 869, it is provided that "the city of Hartford may cause to be paved with granite, asphalt or other substantial pavement other than concrete," a certain length of highway, with power to assess a share of the expense upon abutting owners in the same manner as an assessment is laid "for benefits arising from other public works and improvements."

Under these powers and directions the pavement and assessment described in the complaint have been laid. There can be no reasonable doubt that it is a public work and improvement within the meaning of those words wherever they are used in the city charter.

In *Bowditch* v. *New Haven*, 40 Conn. 503, the laying of a "substantially new pavement" of macadam was said to be a public work or improvement for which an assessment of benefits might be laid under the city charter, which authorized the city council to pave the city streets without specifying the material to be used. In the charter of the city of Bridgeport, granted in 1907, the paving of streets with macadam, cobbles, or asphalt is called and treated as a public improvement. *Citizens Association* v. *Bridgeport*, 84 Conn. 383, 80 Atl. 203.

The defendant leans heavily on the case of *Park Eccl. Soc.* v. *Hartford*, 47 Conn. 89. This was an appeal from an assessment of benefits from the construction of a sewer which was built in 1872 and required an expenditure larger than the sum then fixed by the provision of the charter which we are now considering. The vote of the court of common council ordering this work had not been approved by a vote of a city meeting. The entire expense was assessed upon property owners especially benefited. This court held that

this provision "was intended to apply only to improvements which affect the public at large and which are paid for by the city." This sewer was a local improvement, which directly affected and especially benefited the people of a particular locality in the city. To these people it was to be regarded as an advantage rather than a burden, and therefore they should bear the whole expense. The public at large was not directly interested in this improvement, and its cost should not be made a public burden to be laid on the community by general taxation. "There can be no occasion," said this court (p. 93), "for the people of the whole city to vote upon a question of local improvement in which they have no direct interest, and the expense of which is not borne by them." The operation of the provision in question was held not to apply to a "local improvement," but was limited to "a general improvement" paid for by the city and supposed to benefit the people of the city and "frequently also the community at large."

Applying this reasoning and decision to the case before us, it cannot be disputed that the maintenance of Wethersfield Avenue in a condition fit for use by such vehicles as the necessities of the present times require is a matter which affects not only the people of that particular locality, but more seriously the public at large. Such considerations influenced the city officials when they were considering this improvement. They recognized the street as a "main thoroughfare" and "subjected to very heavy traffic"; that "macadam roadways on trunk lines" were not durable "under changed conditions of traffic"; and the "yearly expense of ineffectual repairs." For these reasons, when the board of street commissioners decided that this improvement should be undertaken, it deemed it just to exercise the power given to it by the legis-

lature to assess one third of the expense on the city, to be paid by the public at large; and its action was approved by the common council. This work was a public work and improvement within the meaning of those words in this provision of the city charter.

It remains to consider the meaning of other words used in this provision. It is conceded that the vote or resolution of the common council relating to this improvement was not approved by a vote of a city meeting, and that the proposed work would require an expenditure of more than $25,000. Under such conditions, it is declared in this clause of this provision of the charter that such a vote or resolution of the common council shall not "be obligatory on said city." That means shall not be binding nor impose any duty on the city, nor require the performance of any act by the city. But it does not forbid any act. Perhaps it might be said that it left it optional or discretionary with the city either to give no effect to a vote not approved by a city meeting, or to permit it to have any effect deemed expedient. If a contract or law or ordinance is for any reason not obligatory on a party or person, he may either disregard it or respect and conform to it, as he shall choose.

This section of the charter regulates the procedure in the passage of a vote or resolution by the common council and its approval or disapproval by the mayor; and it declares in its first clause that, when that procedure has been followed, a vote or resolution "shall become valid and effectual as a corporate act." The intention of the legislature herein expressed by these words is plain and unmistakable. But in the final clause, which we have to construe, these or similar words are not used. The language is not that such a vote or resolution shall be not valid and effectual. The omission of these words, in a negative form, and the

use of another word of different meaning, is significant. It indicates that in this clause it was not the intention of the legislature to express an effect or result which would be the negative or precise opposite of the effect or result expressed in the clause immediately preceding. Not "obligatory" does not mean what "not valid and effectual" in this connection would mean. An effect or result contrary to that intended in the first clause would be expressed in the next clause by the words just used modified by the negative adverb or prefix, as "not valid" or "invalid," and "not effective" or "ineffective." We cannot find the meaning of such words in this provision, because the legislature did not put such words there. We must assume that where the legislature used a word of different meaning, it was its intention to express an idea of a different kind, and not merely a consequence directly contrary to the one expressed in the preceding clause. Whatever we may suspect or believe was the real purpose and object of this provision, we must, in construing it, be guided only by the accepted meaning of the words we find in the provision. Certainly they do not say or necessarily imply that such a vote or resolution as the one in question in this case shall be not valid or not effective for any purpose.

We will examine now other provisions of the city charter, to ascertain what was the function and force of this vote of the common council, passed June 9th, 1919, as a part of the proceedings required in making this public improvement. By amendments of the charter made in 1869 and 1872 (6 Special Laws, p. 743; 7 Id. p. 255), the legislature provided that there shall be a board of street commissioners in the city of Hartford, permanent and nonpartisan, consisting of six freeholders to be appointed by the mayor, who should not be members of the common council, and vested

in this board certain executive powers which it forbade the common council thereafter to exercise. The legislature made this board its agent, and granted to it authority to exercise certain powers directly from the State, and not through the common council. *Hartford* v. *Hartford Electric Light Co.*, 65 Conn. 324, 32 Atl. 925. This law declared that this board "shall have power, and it shall be its duty," to cause to be executed all orders of the common council for the construction and repair of highways and all public works; and, in general, to "do all acts necessary or proper in the execution of the powers and duties aforesaid"; and to exercise exclusively all the powers vested in it by the charter. These amendments made a radical change in the scheme of municipal government in this city. While they still left to the common council the power to order new works or highways and related public improvements, and the power to order pavement of the kind and style it might approve, and to assess the cost upon the city and owners of abutting property, these new provisions directly charged the board of street commissioners with the duty of executing the orders of the common council without interference from the common council, and when a highway was completed gave the power to the board, and made it its duty, without orders from the common council, to maintain the highway as necessity might demand. In 1895, when the necessity for more durable pavement was recognized, and it was made the duty of the city to pave a part of its streets with granite, asphalt, or other substantial pavement, another change was made. 12 Special Laws, pp. 617, 618. Then the power to approve and order a pavement of a kind it might deem proper and to select the streets to be paved, was transferred from the common council to the board of street commissioners, and it was provided that that

board "shall pass votes to be submitted to and approved by the city council, ordering such pavement" and assessing a share of the expense on abutting property. Thereafter there remained with the common council only the power to approve votes passed and submitted by the board of street commissioners. Concerning such matters, that board has been made a branch of the city government, not subordinate to the common council. It is an agent of the city and State, and derives its powers, not from the common council, but directly from the legislature of the State. The common council's approval of a vote of this board may be necessary to make it enforceable and unquestionable, but the approval is not the order for this public improvement, and such an order, unapproved, is not declared to be invalid, nor is the execution of an order not approved forbidden.

Acting under the authority and direction of these laws, the board of street commissioners selected a part of Wethersfield Avenue as the street to be paved, chose asphalt as the kind of pavement, and submitted to the common council its action and its vote ordering this public work and assessing the shares of expense. By its vote or resolution of June 9th, 1919, the common council approved this vote of the board. It was this vote, and not the approval of the common council, which was the vote ordering this public work. Therefore, the council's resolution of approval does not fall within the meaning of the provision concerning a "vote or resolution of said common council ordering a public work or improvement." The vote of June 9th, 1919, was sufficient for the approval of the vote passed and submitted by the board of street commissioners. It had no other function or force.

The charter of the city of Hartford was last revised in 1859. Its provisions were then plainly expressed

in one carefully drawn Act, which created a system of municipal government in which the powers and functions of each department were definitely defined and modified and co-ordinated in their exercise with the powers and functions apportioned to other departments, to secure harmonious operation and make effective the intention of the legislature to promote and protect the city's interests. Since 1859, with changing conditions and needs, the theory and policy of municipal government have been radically changed. The incorporated city has gradually become recognized, and step by step been treated as the agency by which, within its limits, the government of the State is administered. So from year to year the charter of the city of Hartford has been amended many times and in material particulars, and often with little regard for the provisions of other amendments or for an efficient and consistent scheme of modern city government. Some changes have been without apparent consideration for the harmonious working of the system or of their effect upon other assignments of functions and powers to the different officials and departments. The result is that the examination of these numerous and sometimes inconsistent provisions is difficult, and conclusions concerning them are unsatisfactory or unconvincing.

The plaintiffs claim that the approval of the vote of the common council passed June 9th, 1919, by a vote of a city meeting, was "designated as necessary," and therefore its omission was a fault affecting the jurisdiction of the city authorities and rendering all their proceedings void. This is not so. By the provisions of the charter the vote of the city meeting is not "designated as necessary" to give the vote of the common council whatever force these proceedings required. The authorities cited by the plaintiffs are not

applicable to this case. Here we have the provision that no vote, without the approval, "shall be obligatory on said city," and we have already stated the interpretation of those words. The language of the statute considered in *In re Village of LeRoy*, 23 Misc. Rep. 53, 50 N. Y. Supp. 611, expressly "prohibited the establishment" of certain public works until the proposition had been submitted to a popular vote. In *Winnetka* v. *Taylor*, 288 Ill. 624, 124 N. E. 348, the law required that a public hearing should be held on the proposed proceedings before they were begun. In *Mead* v. *Turner*, 60 Misc. Rep. 145, 112 N. Y. Supp. 127, the statute distinctly stated that before levying any tax for a specified public improvement special authority must be obtained from the voters. These provisions forbid certain acts, or prescribe certain acts as preliminary essential requisites to give jurisdiction and make proceedings valid.

In the case before us perhaps the strongest position that could be taken upon this charter provision would be that the unapproved vote of the common council was voidable, and the plaintiffs might have brought an action to restrain the city from proceeding with this pavement. But, whether or not such action could have been taken, it is too late for the plaintiffs to take that position now. If they were aggrieved by the action of the city, they should have made demand for redress promptly and pushed it diligently. The law does not favor and serve those who sleep on their rights. A property owner who stands by in silence and acquiescence and permits an improvement to be made, knowing of its progress and the intention to pay for it by special assessment including his property, and knowing of a defect in the proceedings, will be estopped from attacking the validity of the assessment in an action to restrain its collection or to cancel or dis-

charge a lien based on it. 4 Dillon on Municipal Corporations (5th Ed.) § 1455; 4 McQuillin on Municipal Corporations, § 2014; *Durrel* v. *Woodbury,* 74 N. J. L. 206, 65 Atl. 198; 75 N. J. L. 939, 70 Atl. 1100; *Vanatta* v. *Morristown,* 34 N. J. L. 445; *Atkinson* v. *Newton,* 169 Mass. 240, 47 N. E. 1029; *Scudder* v. *Jones,* 134 Ind. 547, 32 N. E. 221; *Tone* v. *Columbus,* 39 Ohio St. 281; *Jones* v. *Gable,* 150 Mich. 30, 113 N. W. 577; *O'Brien* v. *Wheelock,* 184 U. S. 450, 491, 22 Sup. Ct. 354; *Norwalk Gaslight Co.* v. *Norwalk,* 63 Conn. 495, 522, 28 Atl. 32; *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 394, 65 Atl. 134. And this has been held both when the proceedings have been attacked for irregularity, and when their validity is denied, but color of law exists; *Cass County* v. *Plotner,* 149 Ind. 116, 119, 48 N. E. 635; and when the jurisdiction or power of the municipality has been assailed. *Farr* v. *Detroit,* 136 Mich. 200, 99 N. W. 19; *Vickery* v. *Hendricks County,* 134 Ind. 554, 32 N. E. 880.

The record in this case discloses that the proceedings for the pavement of a part of Wethersfield Avenue with asphalt were undertaken under § 2 of the Special Law amending the city charter (17 Special Laws, 1917, p. 869), and were begun January 14th, 1919, by publishing notice of a public hearing, which was held January 22d, 1919, before the board of street commissioners; that another public meeting was held February 19th, 1919, which was attended by a representative of the plaintiffs; that May 26th, 1919, on recommendation of the board of finance and the board of street commissioners, the common council made "an extra appropriation of $31,232.70 for the city's third of the cost of paving" this part of the avenue; that June 9th, 1919, the common council approved the action and recommendation of the board of street commissioners and the vote of the board ordering that this part of this avenue be

paved with asphalt during the season of 1919; that August 5th, 1919, the contract for this pavement was made; that the work was begun soon afterward and carried on and completed during the summer and fall of 1919; that February 6th, 1920, the assessment of benefits was made and a lien filed on the plaintiffs' property; and that the plaintiffs did not request the defendant to discharge this lien until on or about July 1st, 1920. It is admitted that the city had paid its portion of the expense of this pavement before this suit was brought. It does not appear that the plaintiffs protested or objected to these proceedings at any time or in any way, except by serving on the defendant on or about November 11th, 1919, an application to the Superior Court for an injunction on the ground that its proceedings in ordering and laying this pavement were illegal and void for substantially the same reasons as those set out in the complaint in this action. The plaintiffs have not pressed this application or done anything concerning it, except to file a copy with the clerk of the court in which this suit is pending on December 15th, 1920.

The institution of an action which is not prosecuted diligently does not relieve the plaintiff of the charge of laches. *Johnston* v. *Standard Mining Co.*, 148 U. S. 360, 370, 13 Sup. Ct. 585. In the circumstances of the plaintiffs in this suit, it was their duty, if they intended to object, to use all means in their power to prevent the making or execution of the contract for paving. This they did not do. They stood by in silence and acquiescence during a year, and permitted the contract to be made, the work to be completed, the assessment laid, and the city's portion of it to be paid, meanwhile retaining all the benefits of the improvement. When it seems likely that they will be compelled to pay the comparatively small sum which has been

charged to them on account of those benefits, they first protest. Whatever the force of their objections might have been if they had been pushed when they should have been, they come too late now. At the time this action was begun, the plaintiffs by their conduct had estopped themselves from attacking the validity of this assessment and lien.

The second issue framed by the pleadings and on which the reservation asks advice, is that the board of street commissioners in advertising for bids for this pavement "did not conform to the order of the court of common council." We think they did. The order was to advertise for bids for paving "with asphalt, concrete, bitulithic, or other bituminous paving." That meant that the board might advertise, as it did, for bids for asphalt or any other one or more of the kinds of pavement mentioned. An option was given. Moreover, the board had, as we have seen, the power granted by special law to select the kind of pavement it deemed proper. 12 Special Laws, p. 617. In advertising for bids for asphalt only, the board complied with the order and acted within its independent powers.

The third issue made by the pleadings and presented for advice springs from the fact that the Connecticut Company has not laid that part of the pavement of the street which it is obliged by law to lay. There is no strength in this objection. All that part of the pavement for the expense of which the plaintiffs were assessed to contribute had been finished, and their property has been found to be especially benefited in the sum assessed. The delay or failure of the street-railway company to do its part of the work does not make the assessment void or illegal. *Bowditch* v. *New Haven*, 40 Conn. 503. The vote ordering the paving of Wethersfield Avenue did not specify that the asphalt pavement to be paid for by the city and owners of

property especially benefited should extend from curb to curb, as alleged in the complaint, but expressly excluded from their shares of the expense the cost of paving that portion in the middle of the street which the street-railway company was bound to lay and pay for. 1 Page & Jones on Taxation by Assessment, §§ 437, 527; *Matter of McCormack*, 10 Abb. Prac. (N. S.) 234 (N. Y.). Construing this vote in connection with the special laws and the general statute (§ 3831), there can be no reasonable doubt that the public improvement intended and sufficiently indicated included only that part of the street lying two feet outside of the railway tracks. *Springfield* v. *Weaver*, 137 Mo. 650, 669, 37 S. W. 509.

We have given our advice upon all the issues raised by the demurrer and urged by counsel in their arguments, because in this reservation they have requested that they be finally disposed of. We have thought it is our duty to give advice that will finally dispose of all questions now in controversy between these parties, or likely to arise from new pleadings if only the issues made by this demurrer should be decided. Therefore we have stated our conclusion that by their own conduct the plaintiffs have estopped themselves from maintaining any action to attack the validity of the assessment and lien which are the subject of this suit. Their position is the same as that in which stood the plaintiff in *Fenwick Hall Co.* v. *Old Saybrook*, 69 Conn. 32, 45, 36 Atl. 1068.

For these reasons the City Court of the City of Hartford is advised to render its judgment in favor of the defendant upon the issues of law raised by the demurrer, in accordance with the foregoing opinion.

In this opinion the other judges concurred.