ANNIE M. CONAWAY, RESPONDENT, v. MARGARET DALY, APPELLANT.

Argued May 27, 1929—Decided February 3, 1930.

For the appellant, *Babcock & Champion.*

For the respondent, *Robert J. Tait Paul.*

The opinion of the court was delivered by

BODINE, J. Annie M. Conaway brought ejectment for a tract of land at the corner of Kentucky and Baltic avenues in Atlantic City. The trial judge directed a verdict for the plaintiff.

Mrs. Conaway claims an undivided one-fourth interest in the premises, asserting that she is a granddaughter of Emma L. Schafer, who took title May 26th, 1888. Mrs. Conaway was born June 4th, 1889, at Atlantic City, her mother, a daughter of Mrs. Schafer, died shortly thereafter and many years before Mrs. Schafer's death.

Mrs. Schafer died intestate November 14th, 1897, seized of this and other property. After her death, three of her children conveyed the premises in question to their father, John G. Schafer. This deed is dated December 29th, 1898. On November 29th, 1899, John G. Schafer conveyed the premises to Joseph L. Roth, from whom the defendant claims.

About a year before Mrs. Schafer's death, or in 1896, Roth testified he took possession of the premises under an agreement to purchase from the Schafers. He seems to have remained in possession under the agreement and under the conveyance made to him until he conveyed the premises in 1902 to Thomas Daly. The Dalys have since been in possession. Roth filled in the premises, built sidewalks and rented the premises and otherwise exercised ownership from the time of the agreement of purchase. He paid for the property $5,800. At the time of his agreement to purchase, the rents amounted to about $10 a month. John G. Schafer took back a purchase-money mortgage from Roth.

A partition proceeding between the same parties instituted in the Court of Chancery was stayed pending the trial of this action. We apprehend that ejectment lies under the facts of this case. *Foulke* v. *Bond,* 41 *N. J. L.* 527.

The trial court was in error in directing a verdict for the plaintiff, and in concluding that the defendant had not maintained a defense under the statute of 1922 (*Pamph. L.* 1922, *p.* 315), which is as follows: "Thirty years' actual possession of any lands, tenements, or other real estate, excepting woodlands or uncultivated tracts and that sixty years' actual possession of any woodlands or uncultivated tracts, uninterruptedly continued by occupancy, descent, conveyance or otherwise, in whatever way or manner such possession might have commenced, or have been continued, shall vest a full and complete right and title in every actual possessor or occupier of such lands  *  *  *  and shall be a good and sufficient bar to all claims that may be made, or actions commenced by any person or persons whatsoever, for the recovery of any such lands, tenements or other real estate."

An earlier legislative enactment continuously in the laws, in substantially the same form, is section 1 of the act of June 5th, 1787. *Gen. Stat., p.* 1972. In so far as pertinent, it provides: "That sixty years' actual possession of any lands, &c., uninterruptedly continued by occupancy, descent, conveyance or otherwise; in whatever way or manner such possession might have commenced, or have been continued, shall vest a full and complete right and title in every actual possessor or occupier of such lands, &c., and shall be a good and sufficient bar to all claims that may be made, or actions commenced by any person or persons whatever, for the recovery of any such lands, &c."

Mr. Justice Depue said, in *Spottiswoode* v. *Morris and Essex Railroad Co.,* 61 *N. J. L.* 322, 328: "Possession obtained and held as prescribed by the first section of this act will confer a title paramount to the claims or rights of all other persons."

Mr. Justice Washington, in the Circuit Court for the District of New Jersey (*Wright* v. *Scott, Fed. Cas.* 18,092), similarly construed the statute, and concluded that actual possession uninterruptedly continued by occupancy or otherwise vested a complete title in the possessor.

Joseph L. Roth, the defendant's predecessor in title in this case, did not obtain his deed until 1899, less than thirty years prior to the institution of the ejectment action. But there was proof that in 1896, or early in 1897, he was in possession under an agreement to purchase. Actual possession uninterruptedly continued thirty years, is that which the legislature has said vests title to lands, other than woodlands or uncultivated tracts. The land in suit was not such. It is for the jury to say in each case what the facts may be. *Spottiswoode* v. *Morris and Essex Railroad Co.*, 61 *N. J. L.* 322, 327; *Dunn* v. *Armbruster*, 2 *N. J. Mis. R.* 225.

Mr. Justice Elmer said, of the earlier statutes, in *Pinckney and Bruen* v. *Burrage and Stephens*, 31 *N. J. L.* 21, 24: "The broad and comprehensive language of it may possibly justify its application even to the cases of reversioners and remaindermen. In the case of *Widdowson* v. *Earl of Harrington*, 1 *Jac. & Walk.* 512, Sir Thomas Plumer, master of the rolls, held that section 2 of 32 *Henry VIII*, required the fifty years allowed for bringing a writ of right, to be reckoned from the date of the adverse seizin and not from the death of the tenant for life. The language of Sir W. Blackstone (3 *Com.* 196) is, 'that the possession of lands in fee-simple, uninterruptedly, for three score years, is at present a sufficient title against all the world, and cannot be impeached by any dormant claim whatever,' and although, as is noticed by Christian, and others, this language was too broad (*Sugden Vend.* 270), remarking that he certainly did not mean that the lawful possession of a tenant for life would operate as a bar to the reversioner, but he alluded to a clear adverse possession. Still it may be that this statute was framed with the intent to produce the effect Blackstone, at that time the great authority in New Jersey, had stated the English statutes had."

It seems that the words of the statute must have the same meaning usually accorded to such words. The jury might have found that when Roth entered he had actual possession of the lands, and that these lands were not woodlands or uncultivated tracts. They might have found that the ac-

ceptance of the deed from John G. Schafer did not interrupt that possession. When Roth entered under his agreement of purchase, his possession straightway became adverse as against every one save his grantor. When the purchase-money was paid and the deed received the continuity of his possession was not interrupted. The possession by a vendee, under an agreement of sale, complying with his contract is the possession of a man in his own right, and if he never took a deed the jury still might have found that he was in actual possession, uninterruptedly continued.

"Where the vendee, after occupying the land under his contract of purchase, subsequently acquires a deed thereto, his possession before and after the acquisition of the deed may be tacked to perfect title in himself by adverse possession." 2 *Corp. Jur.* 87.

The judgment below will be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.