LOUIS MILLER, AND CORA HANCE, AS HIS NEXT FRIEND. AND CORA HANCE, IN HER OWN RIGHT, AND AS THE MOTHER OF LOUIS MILLER, PLAINTIFFS-APPELLANTS, v. PENNSYLVANIA-READING SEASHORE LINES, INCORPORATED, A CORPORATION, DEFENDANT-RESPONDENT.

Argued June 1, 1936—Decided October 2, 1936.

For the appellants, *Burton A. Gaskill.*

For the respondent, *Bourgeois & Coulomb.*

The opinion of the court was delivered by

PERSKIE, J.   This is the plaintiff's appeal from a judgment based on a directed verdict in favor of the defendant. The decisive question presented is whether the infant plaintiff was engaged in the lawful use of a public grade crossing when he sustained his injuries or whether he was a trespasser on the property of the defendant company.   The facts giving rise to the query are substantially these:

On September 6th, 1933, the plaintiff, an eight-year-old boy, was crossing the tracks of the defendant company at a turnpike crossing. This crossing lies between Pleasantville and Atlantic City, New Jersey, and on either side thereof is an electrified third rail. The plaintiff tripped and fell against this electrified third rail sustaining serious injuries for which by his next friend he sought to recover. There was proof that this rail was exposed without any covering contrary to the provisions of chapter 139, *Pamph. L.* 1908, *p.* 208. It appears that the public road upon which the plaintiff was walking is a toll road originally established and presumably still owned by a private company. Counsel for the defendant company concedes that the extension of the turnpike across the tracks of the railroad is to be regarded as a public grade crossing, but that, at the time of the accident, plaintiff was a trespasser on the private property of the railroad and not on the turnpike.

It is not controverted that originally the Pleasantville and Atlantic Turnpike Company, which was incorporated by an act of legislature (chapter CCLXX, laws of 1864, page 429) was authorized to construct a turnpike one hundred feet in width. This the aforementioned Turnpike Company did. While the evidence is not altogether clear on this point, yet it appeared that the turnpike was built and in use at least by 1874, some few years before the incorporation and building of the railroad which was the "predecessor" of the instant defendant. Of the one hundred-foot right of way granted to it by its charter, the Turnpike Company improved and used but some sixteen or sixteen and one-half feet. Though there is a controversy as to the exact distance, the third rail in question did extend at least some distance into this one hundred-foot right of way. The defendant offered into evidence a deed dated March 5th, 1880, and claims that under title acquired by this deed, or under color of such title, plus possession for thirty years, it has acquired the entire right of way in this territory except for the sixteen or sixteen and one-half feet actually improved by the Turnpike Company

and in use as a toll road by the public. *Pamph. L.* 1922, *ch.* 188, *p.* 315. With this evidence before him the learned trial judge held that the plaintiff was a trespasser; that the railroad owned the *locus in quo,* and, therefore, directed a verdict in favor of the defendant. It is the propriety of that ruling that is here challenged.

Plaintiffs contend, and we think rightly so, that the learned trial judge erred in directing a verdict in favor of the defendant. This contention is made to rest on the fact that there was at least a jury question presented as to the "ownership of the *locus in quo.*"

The charter of the Turnpike Company gave to it an easement of one hundred feet wide for the benefit of the public. This is not controverted. It is well settled that turnpikes constitute public highways. *State, Parker* v. *City of New Brunswick,* 32 *N. J. L.* 548, 550; *Atlantic and Suburban Railway Co.* v. *State Board of Assessors,* 80 *Id.* 83, 86; 77 *Atl. Rep.* 609. It is equally well settled that this right of way extends the full width of one hundred feet and not merely the part which is worked or actually traveled. *Opdycke* v. *Public Service Railway Co.,* 78 *N. J. L.* 576, 583; 76 *Atl. Rep.* 1032. "A road may be opened, used and worked throughout its entire length and yet not be used and worked on every foot of its entire breadth, and if the *locus in quo,* being within the lines of the road, was not actually passed over by the wheels of vehicles, it would not therefore be vacated." *Humphreys* v. *Mayor, &c., Woodstown,* 48 *N. J. L.* 588, 595; 7 *Atl. Rep.* 301. It would therefore seem that the *locus in quo* was part of a public highway and plaintiff was not a trespasser. In answer to this reasoning defendant relies on *Pamph. L.* 1922, *supra,* which provides that:

"Thirty years actual possession of any lands, tenements, or other real estate, *excepting woodlands or uncultivated tracts and that sixty years' actual possession of any woodlands or uncultivated tracts, uninterruptedly continued by occupancy, descent, conveyance or otherwise, in whatever way or manner such possession might have commenced, or have* been con-

tinued, shall vest a full and complete right and title in every actual possessor or *occupier* of such lands, tenements, or other real estate * * *." (Italics supplied.)

Notwithstanding the fact that this turnpike is a public highway; that our courts have held that the rights of the public in such a highway cannot be defeated by adverse possession; and that there can be no title by prescription against the public (*Hoboken Land and Improvement Co.* v. *Mayor, &c., Hoboken,* 36 *N. J. L.* 540; *Quinlan* v. *Fairhaven,* 102 *Id.* 443, 446; 131 *Atl. Rep.* 870), this statute will not support the direction of a verdict under the circumstances before us. For, in the case of *Conaway* v. *Daly,* 106 *N. J. L.* 207; 148 *Atl. Rep.* 719, this court held (at *p.* 210 of 106 *N. J. L.*):

"Actual possession uninterruptedly continued thirty years is that which the legislature has said vests title to lands other than woodlands and uncultivated tracts. The land in suit was not such. It is for the jury to say in each case what the facts may be. *Spottiswoode* v. *Morris and Essex Railroad Co.,* 61 *N. J. L.* 322, 327; *Dunn* v. *Armbruster,* 2 *N. J. Mis. R.* 225."

It is therefore apparent that it was for the jury to determine whether the *locus in quo* was cultivated or uncultivated land, whether the railroad company, by virtue of their rails running across the turnpike had possession, and whether the circumstances brought the defendant within the purview of the statute.

Under the proofs here exhibited, the direction of the verdict was erroneous.

This disposition of the case renders unnecessary a discussion of the other points raised.

Judgment is reversed, and *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Lloyd, Case, Bodine, Heher, Perskie, Hetfield, Dear, Wells, WolfsKeil, Rafferty, JJ. 12.