This is a motion to strike the defendant's answer to the complaint. The complainant seeks specific performance of a contract to convey lands located in the Township of Harding, Morris County, New Jersey, by warranty deed on or before *Page 40 
the 1st day of August, 1942. The agreement is dated July 1st, 1942. The complainant in accordance with the terms of the contract tendered his deed to the defendant who refused to accept it because of alleged objections to the title appearing as follows: (a) An assessment had been made by managers for the drainage of swamp land under the provisions of an act of the legislature of the State of New Jersey, approved April 21st, 1868, entitled "An act to enable the owners of the swamp and marshy land lying on the upper Passaic, and its tributaries in the counties of Morris and Somerset, to drain the same," and filed in the office of the clerk of the County of Morris on the 21st day of November, 1868; (b) a suit pending in the Court of Chancery of New Jersey as a result of the filing of a bill of complaint on May 9th, 1877, in a cause wherein Elias R. Williams et al. were complainants, and Thomas E. Allen et al. were defendants, the object of which was to have an equitable enforcement of the assessment as filed in the Morris County clerk's office on November 21st, 1868; and (c) a notice of lispendens recorded May 12th, 1877, in the Morris County clerk's office in Book B, page 1, of Chancery notices, in the cause as described in (b) above, which lis pendens is still open and undischarged of record.
The history of the imposition of the aforesaid assessment, the notice of lis pendens, and the 1877 Chancery suit, is outlined and reported in State v. Blake, 35 N.J. Law 208; affirmed,36 N.J. Law 442, and in Williams v. Allen, 32 N.J. Eq. 485, and in Allen v. Williams, 33 N.J. Eq. 584.
In accordance with the provisions of the aforesaid act of the legislature, approved April 21st, 1868, P.L. 1868 p. 1181, the owners of lands in the aforesaid township elected as managers to serve for a period of one year three persons, namely, Elias R. Williams, Elijah P. Oliver and Joseph Blake, to drain swamps and marshy land. The managers in performing their duties under the legislative enactment, purchased a mill site, made surveys, c., and estimated the cost of the work to be done; divided the estimated costs and assessed the lands to be benefited, and filed the assessments in the offices of the clerks of Morris and Somerset Counties. *Page 41 
The power of the managers to purchase the mill site was questioned in a suit instituted in this court; an injunction issued against the managers which restrained them from operating. The injunction was later dissolved.
A second election of managers was held in 1869, and a new group was named. This group controlled the situation created by their predecessors and refused to proceed with the drainage work or improvement and opposed the enforcement of the assessments made by the first group of managers.
The 1868 legislative act was repealed on March 16th, 1870 (P.L. 1870 p. 602); the repealing act however reserved the rights and liabilities created under or by virtue of the 1868 statute.
While the new, or second group of managers took no steps to enforce the assessments of their predecessors, the first group of managers, however, did take steps to enforce the assessments. Their activities are reported in the cases cited above. The Court of Errors and Appeals held that although the assessments were valid and constituted liens on the property, the only persons who could enforce them were the second group of managers. (See36 N.J. Law 442.) On May 9th, 1877, the first group of managers filed a bill in Chancery by which they sought to have the assessments enforced and the moneys expended by them recovered. A motion to strike the bill was made and it was denied. From that determination an appeal was taken to the Court of Errors and Appeals which sustained the Chancery Court's decision. In 1881, the defendants in that suit filed an answer to the complaint. From there on no further step was taken. It lapsed into a state of suspended animation and was permitted to hibernate uninterruptedly over the passing years. The suit and the notice of lis pendens are still open of record.
The complainant in support of his contention that the title is marketable points to the fact that he and his predecessors in title have had the uninterrupted possession of the premises for more than sixty years and that by virtue thereof the assessments, the aforesaid Chancery suit and the lis pendens are not a cloud upon his title. R.S. 2:25-1. Conaway v. Daly,106 N.J. Law 207; 148 Atl. Rep. 719; Gordon v. *Page 42 Lumberville Delaware Bridge Co., 108 N.J. Law 261;158 Atl. Rep. 388; Hummer v. Buerk, 90 N.J. Eq. 97; 106 Atl. Rep. 141. He further observes that the statute of limitations has run against any action being brought on the assessments since none has been commenced within twenty years. R.S. 2:24-13. He also argues that there are no managers in office who could institute an action to enforce recovery on the assessments. The original managers' office was terminated upon the election of their successors. State v. Blake, supra.
The lis pendens aforesaid was filed May 12th, 1877, more than sixty years ago. Under the provisions of R.S. 2:26-32, a lispendens shall be of no effect after three years from the date of the filing thereof; and in R.S. 2:26-38, it is provided that "If the party who filed the lis pendens notice is dead or cannot be found and his attorney or solicitor is dead or has removed from the state, the court having jurisdiction of the cause may, upon being satisfied of the fact of such payment, satisfaction, performance, settlement or abandonment and upon such notice as it may by its order direct, order the real estate affected and described in the lis pendens notice to be discharged of all claims or equities set up in the complaint or bill in the action." (Italics mine.)
It is recited in 30 C.J. at p. 524, the following:
"The doctrine of laches has existed since the beginning of equity jurisdiction. Its existence is independent of statutes of limitation The doctrine of laches is based on the injustice that might result from the enforcement of long neglected rights, the difficulty, if not the impossibility, of ascertaining the truth of the matters in controversy and doing justice between the parties, and on grounds of public policy, its aim being the discouragement, for the peace and repose of society, of stale and antiquated demands. Laches is based on the maxims. Nothing can call equity into activity but conscience, good faith, and diligence. Equity aids the vigilant, not those who slumber on their rights. He who seeks equity must do equity, and, he who comes into equity must come with clean hands."
Also, in 30 C.J.S. 530, appears:
"Negligence in the prosecution of a suit after its commencement may bar relief; the mere institution of a suit does not of itself relieve a person from the operation of the rule of laches; if he fails to prosecute his suit diligently the consequences are the same as *Page 43 
though no suit had been begun. Long neglect to take advantage of leave given by court to assert a right by bill or cross bill may bar the right to file it; and the right to enforce an order of court may be lost by laches. Even where the delay in prosecution is not sufficient to constitute a bar, yet the court may consider it in determining what relief shall be granted. Where aid is sought toward the prosecution of a suit in another court, the court will determine whether the applicant has been guilty of laches and not leave the determination of that question to the other court. Delay in prosecuting a pending suit may be excused as in other cases of apparent laches."
In Dey v. Hathaway Printing and Telephone Co., 41 N.J. Eq. 419; 4 Atl. Rep. 675, Vice-Chancellor Van Fleet among other things said:
"A suitor in a court of equity is required to exercise reasonable diligence in matters of practice as well as in other matters. Laches are always discountenanced by courts of conscience. It has been said that nothing will call forth the activity of a court of equity but conscience, good faith and reasonable diligence."
Certainly the failure to prosecute the Chancery suit of 1877 for more than sixty years without reasonable explanation gives rise to the justifiable conclusion that the parties to that suit are or were guilty of laches. The policy of this court on delays in the prosecution of suits is reflected in Chancery Rule 203
which reads as follows:
"If a suit be suffered to lie without substantial prosecution for one year, it may be considered as abandoned, and the bill may be dismissed on notice."
The ruling in Johnston v. Standard Mining Co., 140 U.S. 360;13 S.Ct. 585; 37 L.Ed. 480, is to the effect that the mere institution of a suit does not of itself relieve a person from the charge of laches; and if he fails to prosecute it with diligence the consequences are the same as if it had never been instituted. That rule is followed in Johnston v. City ofHartford, 96 Conn. 142; 113 Atl. Rep. 273; Lister v. Lister,47 R.I. 366; 133 Atl. Rep. 437; Stewart v. Grant, 126 Me. 195;137 Atl. Rep. 63.
The circumstances surrounding the institution of that suit with the accompanying notice of lis pendens, and the failure *Page 44 
to prosecute it with reasonable diligence warrants the inference that the parties thereto abandoned it. That conclusion, in effect, removes the cloud or clouds from the marketability of the complainant's title to the premises in question.
Under all the circumstances the motion to strike the answer will be granted.